The residence properties of plaintiff and the defendants adjoin and front on Prospect Street in the City of Shreveport, Louisiana, that of plaintiff being west of defendants'. Plaintiff's property is designated as Municipal No. 811 and defendants' as No. 805 on Prospect Street, and will be hereinafter so designated.
For several years prior to 1914, plaintiff owned the ground on which both residences are located. He erected the residence at No. 811, now occupied by him, in the year 1915, and he erected the other residence in the year 1914. Very soon after said residences were completed he built an auto driveway for the service of No. 805 from Prospect Street southerly to a point on a line with the rear walls of both residences. This driveway consists of two parallel concrete strips about eighteen inches wide. The west strip was laid within a few inches *Page 132 
of the piers of the east porch of No. 811 and like distance from the east boundary line thereof. The natural drain of the terrain is from Prospect Street southerly. The difference in elevation between the north and south ends of the driveway is 4 of a foot.
In the scheme for developing and improving the large lot owned by plaintiff at the corner of Line Avenue and Prospect Street, partly occupied by said residences, plaintiff adopted a plan of drainage designed to protect both properties, especially the basements under each, from excessive rainwater. Pursuant to and as an integral part of this plan he built upon the outer edge of each concrete strip of the driveway a concrete curbing about three inches high, and upon or against the curbing next to No. 811, he rested ends of concrete splash pans to conduct into the driveway rainwater from the roof which first entered eave gutters and then downspouts that rested on the splash pans. Ultimately, it was intended to conduct all of this water into Line Avenue, the east boundary of No. 805. This latter part of the drainage set-up effectively protected No. 811 from water that would otherwise have found its way under the house and, in case of extra heavy rains into the large basement used as a storeroom. It likewise protected No. 805 from the spread of water as it coursed down the driveway to its southern terminus.
In 1940 plaintiff and his wife, then occupying No. 805, mortgaged the same to the Home Owners Loan Corporation. This mortgage was foreclosed in 1941 and the property was adjudicated at sheriff's sale to the mortgagee, who soon thereafter sold the same to Guy M. Dorman, who, on May 3, 1946, sold it to defendant, John P. Ketteringham.
No friction between the adjoining owners arose until March, 1947. In that month Mr. Ketteringham complained to plaintiff that the water discharged upon the driveway was overflowing upon and damaging his property, and suggested a plan to alleviate the situation, to which plaintiff, seventy-eight years of age, replied that the drainage system was satisfactory to him. This retort and plaintiff's attitude toward the matter evidently vexed Mr. Ketteringham as he at once proceeded to forcibly alter the position of the downspouts so that water coming through them would spill upon plaintiff's lot. Plaintiff thereafter restored the downspouts to their former position but a few weeks later Mrs. Ketteringham treated them as her husband had formerly done. Again plaintiff restored the downspouts to their former position. Defendants' son also changed the position of one of the downspouts and some member of the Ketteringham family pushed or shoved old garments into them. This suit soon thereafter was instituted to submit the contest to the courts for solution. Mr. Ketteringham and his wife were made defendants.
Plaintiff's suit is predicated upon the theory that defendants' property, the driveway, is burdened with a servitude of drip and drain in favor of his own, arising from, the facts and conditions herein above narrated. He invokes for his protection the law governing possessory actions and prays that the alleged servitude be recognized and that defendants be perpetually enjoined from further disturbing him in the peaceful possession thereof. He couples with his suit a demand for damages, embracing several items, in the aggregate of $1,665, and for attorney's fee.
Defendants excepted to the petition as not disclosing either a cause or a right of action. These exceptions were overruled and are not presently urged. The answer is, in effect, a general denial of the essential allegations of the petition. However, defendants reconvened. They allege, as is true, that in the mortgage given by plaintiff and wife to the HOLC, no servitude of any nature was mentioned or reserved by them in favor of their other property, being No. 811, and, for this reason, plaintiff is now estopped by his warranty to assert the existence of the servitude as against the owner of No. 805. Defendants aver that instead of creating a servitude upon their property, the functioning of the downspouts is but a nuisance, and whatever acts done by them with respect thereto, were, in effect, an effort to abate said nuisance. They also allege that the water which pours through the downspouts pools upon the driveway, overflows upon their lot in different *Page 133 
directions, a part of which ultimately finds its way under the residence and into the basement where it has done material damage to goods stored and to the water heater therein; that the said overflow water in other alleged respects has done and is doing damage to their property; that plaintiff is simply asserting and attempting to have enforced the alleged servitude in order to escape the expense of establishing a drainage system on his own property to protect it from the damage and inconveniences he is willing to impose upon defendants; and that he should be ordered by the court to institute such a system.
Defendants itemized elements of damages allegedly sustained by them because of plaintiff's action in the respects above mentioned, but while the trial was in progress they entered a non-suit to this part of the reconventional demand.
In the alternative, defendants plead that should it be found and held that plaintiff has a servitude upon their property, as by him asserted, in that contingency they allege that the servitude has become more burdensome in that the character of inconvenience and damage now being suffered therefrom did not formerly exist, or if it did exist, then to a much lesser degree than now; that because of the servitude, if it is found to exist, they have been prevented from making advantageous repairs to their estate.
Defendants in their alternative demand, relying upon Article No. 777 of the Civil Code, offer to plaintiff, for the benefit of his estate, a strip of land along the dividing line between the two estates, out to Prospect Street, on and over which the alleged servitude could be exercised, under conditions and limitations to be fixed by the court, and at plaintiff's expense. The location of the tendered strip, it is alleged, is as convenient to his estate as is the driveway.
Further, in the alternative, should it be found and held that the servitude does in fact exist, and that plaintiff is not legally bound to accept the tender of the strip above referred to, on which to exercise same, in such event they aver that the driveway has fallen into such a state of disrepair it does not serve the purposes of a drainway as it formerly did, to which the damage and inconvenience complained of is traceable; that plaintiff, if he intends to continue exercise of the servitude, should be ordered to restore (by repairs) the driveway to its former efficient condition, and at his own expense.
Defendants pray in consonance with their reconventional and alternative demands.
The case was tried before Judge Woods, but was decided by Judge Bryan E. Bush, who, for a brief time, served as Judge Woods' successor.
There was judgment for defendants, plaintiffs in reconvention, permanently enjoining plaintiff from discharging or permitting to be discharged upon defendants' property the waters that flow from the four downspouts located upon the east side of plaintiff's residence. After unsuccessful effort for a rehearing, plaintiff appealed to this court.
The testimony in the case covers more than two hundred fifty pages. Its ramifications, to a large extent, go far afield of the essential though simple primary issue in the case, which is: Do the uncontradicted facts, with respect to the discharge of water through the downspouts upon the driveway, property of the defendants, confer upon the plaintiff a right of servitude, which defendants are without right to molest? Of course, if this question is answered in the affirmative, then it becomes necessary to determine if the servitude is a continuous, apparent one as defined by the law.
The driveway was primarily built for the use of automobiles of tenants and other persons who lived in No. 805, and has been so used for over thirty years. There is strong reason to support the conclusion that the driveway accomplished all that was expected of it as such and, in addition, has been a means of conducting rainwater away from both buildings. Mr. Dorman, who owned No. 805 from August, 1941, until May 3, 1946, the date he sold it to Mr. Ketteringham, testified that when he purchased the property he observed no signs of damage thereto from water standing on and passing over the driveway, but after *Page 134 
the lapse of some two years there occurred a sloughing in the walls of the basement which he attributed too seepage from the driveway. Thereafter, the basement under No. 805 became flooded two or more times.
It is very clear from the testimony and from photographs in the record that the physical condition of the driveway, in places, from use, has materially deteriorated.
It goes without saying that there are two indispensable prerequisites to the creation of a real or predial servitude, to-wit: two contiguous estates owned by different persons. Article No. 647 of the Civil Code defines this character of servitude as being "a charge laid on an estate for the use and utility of another estate belonging to another owner."
In a case wherein the owner of two different estates makes application of one to the advantage of the other, it is not, so long as such ownership exists, called a servitude but adisposition by the owner (Civil Code, Article No. 649), the legal effects of which are clearly set forth in Articles, 767, 768 and 769 of the Civil Code, upon which plaintiff relies for success in this suit. These articles read as follows:
"The destination made by the owner is equivalent to title with respect to continuous apparent servitudes.
"By destination is meant the relation established between two immovables by the owner of both, which would constitute a servitude if the two immovables belonged to two different owners." Art. 767.
"Such intention is never presumed till it has been proved that both estates, now divided have belonged to the same owner, and that it was by him that the things have been placed in the situation from which the servitudes result." Art. 768.
"If the owner of two estates, between which there exists an apparent sign of servitude, sell one of those estates, and if the deed of sale be silent respecting the servitude, the same shall continue to exist actively or passively in favor of or upon the estate which has been sold." Art. 769.
This disposition is commonly denominated a "destination du pere de famille," the significance of which is accurately expressed in 26 C.J.S., Destination, page 1245, viz.:
"The use which the owner has intentionally established on a particular part of his property in favor of another part, and which is equal to a title with respect to perpetual and apparent servitudes thereon."
These quoted articles of the Civil Code, it seems to us, fit the facts of the present case perfectly. Here, we had originally two different pieces of improved real estate owned by one person. He made a disposition for the advantage of both estates, particularly in favor of the one he now owns. Ownership of the two estates has become separate.
It will be observed that it is said in Article No. 769 that although the deed by which ownership of the two estates becomes separated, "be silent respecting the servitude" this fact will not unfavorably affect the operative effect of the destination (servitude) but that "the same shall continue to exist actively or passively in favor of or upon the estate which has been sold."
And in said Article No. 767 it is said that such a destination "is equivalent to title with respect to continuous apparent servitudes."
Article No. 728 of the Civil Code defines an apparent servitude as being: "such as are to be perceivable by exterior works; such as a door, a window, an aqueduct."
It is obvious that the servitude in question is apparent, the same being one of drip or drain. Mr. Ketteringham, as lessee, lived in the residence at 805 Prospect Street for over four years before he purchased it. Undoubtedly he had knowledge of the existence of the servitude. He does not deny such knowledge.
It is equally as certain that the servitude is continuous as distinguished from non-continuous. "Continuous servitudes are those whose use is or may be continual without the act of man. Such are aqueducts, drain, view and the like." Civil Code Article No. 727. See also: Levet v. Lapeyrollerie, 39 La. Ann. 210, 1 So. 672; Kennedy v. Succession of A. N. McCollam, 34 La. Ann. 568-574; Fuller et al. v. Washington, La. App.,19 So.2d 730; Ogborn *Page 135 
v. Lower Terrebonne Refining Manufacturing Company,129 La. 379, 56 So. 323.
The servitude being apparent and continuous, could be established otherwise than by title, and according to Article769 of the Civil Code, quoted above, runs with the title to the estate although there be no evidence of it upon the public records.
This principle is so well embedded in the jurisprudence of this state that citation of adjudications announcing the same would appear unnecessary; but, among the many cases on the subject, we do mention the following that appear to be in point, to-wit: Durel, Administrator v. Boisblanc et al., 1 La. Ann. 407; J. A. Rozier v. A. A. Maginnis et al., 12 La. Ann. 108; J. U. Lavillebeuvre v. James Cosgrove, 13 La. Ann. 323; Mary Taylor v. Archibald Boulware, 35 La. Ann. 469.
Article No. 777 of the Civil Code, relied upon by defendants in one of their alternative demands, provides that the owner of the servient estate can do nothing to diminish use of the servitude nor make it more inconvenient, such as changing the condition of the premises or transfer of the exercise of the servitude to a different location. It also provides, however, that if the primitive assignment has become more burdensome to the owner of the servient estate, or if he is thereby prevented from making advantageous repairs on his estate, he may offer to the owner of the other (dominant) estate a place equally convenient for the exercise of his rights, and the owner of the dominant estate cannot refuse the offer.
This law, we believe, is not controlling in the present case. In the first place, it is not seriously urged nor is it shown that the use of the servitude has become more burdensome to the servient estate, nor has its existence prevented the owner of that estate from making advantageous repairs thereto; and, in addition, for plaintiff to avail himself of the offer would require him to install a line of tile drainage, partly, at least, above the ground, into which the downspouts would have to be introduced, at a cost of not less than $125. We believe, all things considered, that plaintiff is not legally required to accept this offer as a condition precedent to the preservation of the servitude. The locus, in our opinion, is not "a place equally convenient" as required by the said Article No. 777.
The plea of estoppel is without merit. The fact that ownership of the two estates became separate through public sale does not remove the case from the purview of Article No. 769 of the Civil Code. This is expressly held in Durel, Administrator v. Boisblanc et al., supra.
Even though it be conceded, arguendo, that the HOLC could have successfully interposed the urged estoppel, we believe defendants are not in a position to do so since the servitude was apparent and had existed many years to the knowledge of Mr. Ketteringham, and he, since his acquisition of the property, offered no objection thereto until many months thereafter.
We are satisfied that the driveway can be put in such physical condition that it will serve plaintiff's purposes and at the same time will not be the means of damage to defendants' property. The fact that for many years it did efficiently serve in this dual capacity is sufficient proof to support these conclusions. And we are of the opinion that the expense of such reconditioning of the driveway should fall upon the plaintiff. Articles Nos. 772 and 773 of the Civil Code make this certain.
To effectuate the necessary repairs to the driveway plaintiff has the right to go upon it with his workmen and material. Civil Code, Article No. 774.
Plaintiff proved that it would cost $21.00 to have the downspouts restored to their condition prior to being damaged by defendants. He is entitled to recover this amount.
Plaintiff sued to recover $500 as a reasonable fee for the services of his counsel. Attorney's fee in a case of this character, it has often been held, is an element of damages for which recovery may be had. See: Williams et al. v. Harmanson, 41 La. Ann. 702, 6 So. 604; Vidrine v. Vidrine, 14 La. App. 484, 130 So. 244; De Graauw v. Eleazar, La. App., 24 So.2d 180. *Page 136 
Defendants' actions forced plaintiff to engage counsel to assert his rights and protect him in the peaceful enjoyment thereof. It was not necessary for defendants to go upon plaintiff's property to commit the wrongful trespass of which we have found them to be guilty. They were able to do this by simply standing upon the driveway and using sufficient force to injure and dislocate the downspouts. Their actions in the respects herein mentioned were wanton if not malicious. They attempted to take the law into their own hands instead of appealing to it as the plaintiff did. It is shown that Mr. Ketteringham, while vexed, stated to plaintiff that he would tear down the downspouts as often as they were restored to normal position. We think a fee of $200 adequate.
Other elements of damages sued for are not insisted upon. They are not supported by adequate proof.
Therefore, for the reasons herein assigned, the judgment appealed from is annulled, avoided and reversed, and there is now judgment in favor of plaintiff, Arthur Efner, and against defendants, J. P. Ketteringham and his wife, Clare Robinson Ketteringham, decreeing and recognizing a right of servitude of drip and drain over the driveway along the west side of defendants' lot, described in the pleadings herein; and defendants are hereby enjoined, restrained and prohibited from disturbing plaintiff's peaceful possession and use thereof, all subject to the conditions hereinafter stated:
That within ninety (90) days from finality of this judgment, plaintiff, at his own expense, shall repair and recondition said driveway, within its present limits, in such way and manner so that water from his property, passing over it, will not run beneath defendants' residence or in any other manner cause damage thereto.
It is further ordered, adjudged and decreed that should plaintiff not within the time stated, comply with the conditions above imposed upon him, his right of servitude herein recognized shall be forfeited and the same shall cease to exist.
It is further ordered, adjudged and decreed that plaintiff do have and recover judgment against the defendants in solido in the sum of Two Hundred Twenty One ($221) Dollars, with legal interest from judicial demand until paid.
And, finally, it is ordered that defendants pay all costs of this suit.