The Edgewood Land Logging Company, hereinafter referred to as Edgewood Company, owned a certain tract of land in the Town of DeQuincy. It subdivided this tract of land into blocks, lots and streets. Block 11 was bounded on the north by LeBlanc Street, on the East by McNesse Avenue, south by First Street and west by Page Street; in the center, there is an alley of fifteen feet, running east and west. The block is divided into sixteen lots, eight facing LeBlanc Street and eight facing First Street. *Page 480 
It appears that the natural drain of the property to the south of said block is toward the center of Block 11 and thence from south to north. The center of the block is lot 5, facing LeBlanc Street, and lot 12 facing First Street.
After the subdivision by Edgewood Company, the Town of DeQuincy constructed a concrete sidewalk on the north side of First Street. At about the western edge of lot 12 of said Block 11, and under the sidewalk walk, the Town laid galvanized pipes or culvert of about eighteen inches in diameter in order to properly drain and carry the water from said street and from the south thereof. At about the same time, with the consent and authorization of the Edgewood Company, the then owner of lots 12 and 5, the Town constructed a ditch, within the natural drain, alongside the western side of lot 12, across the alley, and the western side of lot 5 northerly to LeBlanc Street, probably to speed up the drainage of First Street and property to the south thereof.
On April 15, 1925, plaintiff purchased lot 11, said lot lying to the west of lot 12, upon which plaintiff built his residence. On July 13, 1942, plaintiff purchased lot 12. Immediately after his purchase, with the approval and consent of the mayor of the Town of DeQuincy, the plaintiff laid a line of eighteen inch concrete pipes connecting with the pipe or drain under the sidewalk and in the ditch constructed by the Town continuously to a point of about eighteen inches from the southern boundary of defendant's property, the said property then being owned by the Edgewood Company, and filled in the said ditch, covering the said line of pipes with dirt. On July 20, 1944, the Edgewood Company sold lot 5 to L. E. LeBlanc, who, on Oct. 17, 1946, sold the said lot to H. A. Yellot, who, in turn, on Nov. 21, 1946, sold the same to L. J. Pinder, the defendant herein.
In his petition, plaintiff alleges that, on or about the 5th day of February, 1948, the defendant "caused to be erected a brick obstruction over, on, and across the eighteen inch concrete drain," (presumably meaning that the obstruction was constructed at the end or mouth of the line of concrete pipes or drain). He describes the obstruction as being about two feet high and twenty-four inches wide. He alleges that the obstruction prevents the natural flow of water through the concrete drain, causing his property to be flooded by ordinary rains "and particularly during the recent heavy floods and rains which have been continuous for some time, and on February 21st, 1948, and March 5, 1948, said first described property was flooded, mud and other refuse accumulated, and water was backed up on the residence of plaintiff's property constituting a nuisance per se, and making it practically impossible for him to go to and from his residence." Plaintiff further alleges that, by the acts of defendant, he has suffered and will continue to suffer damages unless the defendant is ordered and commanded to remove the said obstruction. He accordingly prays for a peremptory and mandatory writ of mandamus, ordering the defendant to remove the obstruction from "the concrete drainage ditch" or pipes.
In his answer, the defendant denies the material allegations of plaintiffs' petition, and assuming the position of plaintiff in reconvention he avers that plaintiff's property was originally lower than the sidewalk constructed by the Town of DeQuincy; that in order to protect his property from the natural course of drain over his property, plaintiff "built in, raised and elevated his lots" and constructed the concrete drain in order to avoid the water on First Street from overflowing over the sidewalk, ponding and standing in front of his property; that by the construction of the concrete drain, the plaintiff, Wood, has "thereby converted and changed and forced all the water from the property above and which accumulated in first (First) street (Street) from it's natural course through said culvert underneath his property, the alley and on to your appearer's property, so that none but surface water touches Wood's property." He further alleges that "when it rains, the water instead of flowing slowly over and spreading out in it's natural course of drainage over Wood's property on to your appearers property comes through said artificial culvert, willfully placed there by the *Page 481 
said Wood, with a terrific force on to your appearer's property blowing out a large hole and inundating your petitioner's entire lot with water, mud and other objects * * *." He prays that plaintiff's demand be rejected, and, in reconvention, he prays for a writ of mandamus against plaintiff Wood "commanding him to close or remove the artificial culvert and prevent the water from the property above from flowing over your appearer's property through such culvert or in any other manner than by natural drainage."
Upon these issues, the case came to trial on May 20, 1948. After plaintiff had practically closed his testimony, the trial judge felt that he should visit and make an examination of the locus in question, and thereupon recessed the trial of the case and continued it until May 31, 1948. He visited the premises on May 21, 1948, and at the continuance of the trial, dictated into the record a statement of his findings. The trial of the case was then resumed. After submission of the case, the trial judge rendered judgment rejecting plaintiff's demand, and granting unto defendant judgment in reconvention for a writ of mandamus against the plaintiff, commanding him to close the culvert which is presently emptying the water flowing through it upon defendant's property so that no water will be diverted on defendant's property only by flow caused by natural drain. Plaintiff filed a motion for rehearing which was refused. Plaintiff then appealed.
A review of the record shows considerable conflict in the testimony as to the actual situation existing with reference to the drainage problem involved in this case.
The plaintiff himself testified definitely that the concrete drain which he installed was obstructed by the defendant in the latter part of 1947 or the first part of 1948. He even went so far as to say that the defendant erected a brick wall two feet high and twenty-four inches wide at the mouth of the concrete drain and that this prevented the flow of water through the drain. He testified further that the concrete drain in no manner interferred with the flow of water if not obstructed and if the ditch on defendant's land had not been filled in by the defendant.
Plaintiff's testimony is corroborated by Mayor Fontenot of the Town of DeQuincy and by Clarence Bennett, an employee of the Town. Mayor Fontenot testified in effect that the drain placed by plaintiff in the ditch on his property did not retard the drainage of First Street or the property south thereof nor did it make the water flow more freely. He states that the defendant by filling the ditch on his land checked the flow of water and caused defendant's property to flood more than if the ditch would have been left open; that defendant prior to filling the ditch had informed him of his intention to do so but that neither he nor the City Council consented to this being done.
Clarence Bennett, the city employee, testified very much to the same effect and his testimony clearly shows that the ditch on defendant's property was in existence until filled in by the defendant. He states that it was his duty as a city employee to keep this ditch clean and open and further that the concrete drain together with the open ditch were entirely sufficient to drain First Street for ordinary purposes. He further states that the filling of the ditch and the placing of obstructions at the mouth of the concrete drain interferred with the flow of water through the concrete drain.
Plaintiff is further corroborated by a next door neighbor, Mrs. Cooley, who states that plaintiff did build up his land to the level of the sidewalk and that at that time the City installed a culvert under the sidewalk and a ditch was dug on the property purchased by plaintiff extended north to LeBlanc Street and meeting this culvert; that later plaintiff constructed the concrete drain and that this concrete drain did not in any manner change the drainage condition, the only difference being that water flowed through the drain instead of the ditch. She did not testify with regard to the obstruction of the drain or to the filling of the ditch by the defendant.
Further corroboration of plaintiff is given by Woodrow Martin, his son-in-law, who stated that there was an obstruction at the end of the drain which completely stopped the flow of water and that the ditch on defendant's property had been filled in; and by his wife who stated that at the end of *Page 482 
the drain pieces of cement and brick and other material had been placed which caused the flow of water to back up in an ordinary rain and also that she saw the defendant have dirt hauled to fill the ditch on his land. Mrs. Massingil corroborated plaintiff to a minor extent by saying that in the spring of 1948 she saw water over plaintiff's property.
On the other hand, defendant testified positively that he did not place any obstruction which in any manner stopped the flow of water from the drain but he does admit that near the mouth of the drain he placed bricks to prevent the water from rushing unto his property and washing the dirt thereon away and creating holes. He further admits that he filled in holes at the location where the ditch formerly was but contends that there was no ditch there but merely holes which held water and did not help in any way in drainage; that he merely filled in those holes so that he could mow his lawn. He contends that the concrete drain built by plaintiff caused the water to rush unto his property instead of flowing gradually and thereby caused damage to his property.
Defendant is corroborated by Frank Hackler and Mrs. A. J. Hackler, two of his neighbors and by his father-in-law Lawrence R. LeBlanc. These witnesses, however, also admit that defendant did place bricks near the north of the concrete drain and did place dirt at the location of the former ditch. Like the defendant they maintain that the placing of these bricks did not in any manner interfere with the flow of water from the concrete drain but merely slowed down the flow. Like defendant, also, their testimony is to the effect that there was no ditch on defendant's property and that the filling in was merely done to stop up holes.
R. E. Durham, a neighbor of plaintiff, also testified that he examined the obstruction placed by defendant at the end of the concrete drain and that the obstruction did check the flow of water coming out of the drain but did not stop it.
Mr. Ray Yaw, a representative of the Edgewood Company, testified that he sold plaintiff lot 12 and at that time the sidewalk was about eight inches above the ground; that plaintiff raised or filled in the lot and that, at the time of trial, the lot was about four inches above the sidewalk; that plaintiff's lot is level and is about eight inches higher than defendant's lot; that defendant's lot begins to slope at the alley; that the company gave the City of DeQuincy a permit to dig the ditch from the sidewalk through its property to LeBlanc Street.
The trial judge, noticing the conflict in the testimony continued the case to May 31, 1948 and gave notice to the litigants that he proposed to visit the premises in the meantime.
The trial judge, on resumption of the trial of the case on May 31, 1948, dictated the following into the record:
"The Court finds from personal observation that the property of Charles D. Wood lies south and across a narrow alley from the property of L. J. Pinder. The Court further finds from observation that the natural drainage in that area flows * * * north from a point south of the property of Charles D. Wood, flows west from a point east of the property of both parties and flows east from a point west of the property of both parties. In other words, the property involved in this suit is in the bottom of a natural basin with elevated land to the east, south and west, which causes the natural flow of water to flow from the three directions mentioned northward across both pieces of property.
"The Court finds that there is a drainage tile approximately eighteen inches in diameter that runs from south to north lengthwise across the property of Charles D. Wood. It runs across the alley separating the two pieces of property and extends on to the property of L. J. Pinder approximately eighteen inches. This tile is completely covered with earth so that it is entirely below the natural surface with the exception that the top of it is exposed for a few inches where the tile crosses the alley and enters Pinder's property.
"The Court finds as a fact that there is absolutely no brick wall constructed in front of the north opening of the drainage tile; that there is no evidence whatsoever *Page 483 
that there was ever any brick wall constructed at that point; that there is no evidence of any considerable number of bricks near the opening to the tile.
"The Court does find as a fact that there is one row of concrete building blocks running near the south line of Pinder's property in an easterly and westerly direction, but does find also as a fact that these concrete blocks are on top of the earth which is covering the tile at that point and the concrete blocks do not interfere in any way with either the natural drainage or with the water passing through the tile.
"The Court does find that where the tile enters the property of L. J. Pinder there has been placed some rubble at the opening which does go into the tile for a few inches but is principally north of the opening or outlet of the tile. The Court finds as a fact that the rocks or rubble so placed would not interfere with the water passing through the tile in any manner whatsoever, since the original opening drainage ditch across the L. J. Pinder property has been entirely filled up and the earth in the ditch would impede the flow of water through the tile as much as it is impeded by the rubble placed at the end of the tile for the purpose of keeping the earth from being washed away by the flow of water.
"The Court found from observation that any drainage ditch that may have been constructed by the City across the property of L. J. Pinder is presently completely filled up so that there is no evidence of a ditch across this lot at this time."
"The Court found as a fact, from observation also, that there was a drain constructed by the City underneath the sidewalk on the south side of Wood's property and that the concrete tile connects with the drain under the sidewalk and from the street at the same level that the drain is constructed.
"Mr. Kay: 'You mean the drain from the south side?'
"The Court: 'From the south side. In other words, there are two drains there. There is a drain that comes from the south into the street that is to the east of the one that comes from the street out north on to Wood's property normally but which is now connected with this tile that goes underneath Wood's property.'
"Mr. Kay: 'Would the Court state, from your observation, how low under the concrete sidewalk that drain is?'
"The Court: 'Well, it is I'm sure an eighteen-inch tile and the top of the tile is constructed below the sidewalk. The top of the tile is slightly under the present surface of the lot. Toward the back or north side of the lot you can see a little ridge in the lot over the tile.' "
At the conclusion of the introduction of the evidence the trial judge dictated into the record the following:
"Gentlemen, there is one point in this case that I would like to know whether there is any instrument granting a right-of-way for a drainage ditch of any kind across either or both of these lots.
"The existence of such an easement and the recordation of such an easement is what determines the decision in this case as I see it.
"The proposition is this: This man Pinder bought a lot. Now whether or not there was an easement across that lot, a right-of-way which is a matter of record, depends on what he can do to his lot. If there was an easement across there granted to the City by the Edgewood Land and Lumber (Logging) Company, then he must observe that easement and not interfere in any manner with what was already there. Therefore, it is very important to the Court to know whether there was any written instrument of record at that time these transactions took place."
The trial judge then held the case open for the introduction of such proof and continued the case to June 21, 1948.
Although the petition is inarticulately drawn, we are of the opinion that it relates to a natural servitude of drain. The natural servitude of drain is a predial or landed servitude; it is established for the benefit of an estate and is rather due to the estate than to the owner personally. Civil Code, Art.646.
Article 660 of the Revised Civil Code provides: "It is a servitude due by the estate situated below to receive the waters *Page 484 
which run naturally from the estate situated above, provided the industry of man has not been used to create that servitude. The proprietor below is not at liberty to raise any dam, or to make any other work, to prevent this running of the water. The proprietor above can do nothing whereby the natural servitude due by the estate below may be rendered more burdensome."
Article 667 of the Revised Civil Code provides that "Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."
Article 724 of the Revised Civil Code provides that, "The conducting of water or aqueduct is the right by which one conducts water from his estate through the land of his neighbor by means of an aqueduct or ditch."
According to Article 727 and 728 of the Revised Civil Code, the servitudes of aqueducts or ditch and/or drain are continuous apparent servitudes. Such servitudes can be acquired by the prescription of ten years. Kennedy v. Succession of A. S. McCollam, 34 La. Ann. 568. Article 767 of the Revised Civil Code provides that "The destination made by the owner is equivalent to title with respect to continuous apparent servitudes."
Under the facts as we view them, prior to 1925, the Edgewood Land Logging Company owned all of the property to the south of Block 11 and also Block 11. It dedicated, by its subdivision, First Street to the Town of DeQuincy. The natural flow of water of the property to the south of First Street was towards the south, across First Street and thence across Block 11 at about the center thereof. After the Edgewood Company built a raised sidewalk abutting on the south of Block 11, the natural drain to the north was obstructed, causing the water to pond on First Street. In order to relieve that situation, with the consent, approval and authorization of the Edgewood Company, the then owner of lots 12 and 5, the Town of DeQuincy constructed and laid underneath the sidewalk, an 18-inch galvanized drain pipe up to about eight feet on lot 12 and dug a ditch, three feet wide and two feet deep, across and through the whole of Block 11, lying alongside the western portion of lots 12 and 5. This ditch was sufficient to take care of the ordinary drainage of the property to the south of First Street and First Street.
According to Articles 724, 727 and 728, supra, the construction by the Town of the culvert underneath the sidewalk and the ditch was the construction of a continuous apparent servitude which can be acquired by prescription of ten years. Kennedy v. Succession of McCollam, 34 La. Ann. 568. Parol evidence is admissible to show when this culvert and ditch were constructed. We have no definite proof when the culvert and ditch were so constructed.
There is also evidence lacking in this record definitely showing when and by whom the sidewalk was constructed and the elevation of the same above lot 12. Plaintiff had the right to fill in his property at least even with the grade of the sidewalk.
However, we are of the opinion that the culvert and ditch were a destination made by the owner of lots 12 and 5 for the benefit of First Street, and the property to the south thereof and particularly for the benefit of lot 12 which faced First Street. Under the provision of Article 767, it is equivalent to title. The evidence is meagre and the case should be remanded for further evidence relating thereto.
It could be said that the above position can only be raised by the Town of DeQuincy and/or property owners to the south of First Street. However, under Code of Practice, Article 15, plaintiff as owner of property facing south on First Street has a real right to see that water is not allowed to pond in front of his property and thereafter overflow across the sidewalk and thence over his property. It would make the servitude of drain over his property more burdensome to close the culvert underneath the sidewalk and the ditch.
Now passing to the rights of the parties inter sese: The plaintiff has failed to prove that defendant has constructed a brick wall at the end of the concrete drain *Page 485 
as alleged and testified to by him. However, we are of the opinion that the evidence shows that defendant has caused obstructions to be placed in close proximity of, if not within, the mouth of the concrete drain to such an extent so as to materially affect the flow of water therefrom. According to some of the disinterested witnesses, the mouth of the drain is two-thirds closed. According to our finding, the defendant has completely filled in the ditch constructed by the Town of DeQuincy. We feel that it has been sufficiently shown that when defendant purchased lot 5, the ditch was there and was fully apparent that it had been constructed to carry such waters as were discharged from the concrete drain.
One of the prohibitions enumerated in Article 660, supra, is that the defendant could not impede or prevent the discharge of the water from the concrete drain and the subsequent running of such water through this ditch.
It appears from the written reasons for judgment and the judgment subsequently rendered that the judge held that defendant had not done anything to prevent the flow of water, but to the contrary that the plaintiff had constructed the concrete drain which rendered the natural servitude due by the property of the defendant more burdensome and therefore in violation of the second prohibition contained in Article 660, supra. In this, we believe he has erred as a proposition of law. Article 660 is to be liberally construed in favor of the estate to which the servitude is due. Guesnard v. Bird, 33 La. Ann. 766. It has been repeatedly held that the owner of an estate whose waters flow by natural drains on the land of his neighbor, may cut ditches by which the waters may be concentrated and their flow increased beyond the slow natural process by which they would ultimately reach the same destination. The evidence in this case conclusively shows that neither the Town of DeQuincy nor the plaintiff has constructed any artificial aqueduct or drain which would make the natural servitude of drain which defendant's property owed either to the Town or plaintiff's property more burdensome. The construction of the galvanized culvert underneath the sidewalk by the town and the culvert drain by the plaintiff have only concentrated and increased the water which would ultimately flow on defendant's property. The defendant has utterly failed to show that this drain causes more water to flow on his property which ultimately would not flow but on account of this drain.
We admit that the defendant is free to do with his property whatever he pleases, "still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him." Revised Civil Code, Article 667. The evidence in this case, in our opinion, shows that the obstructions placed at or in the mouth of the concrete drain, and the filling in of the ditch sufficiently retards the flow of water so as to cause the water on First Street to pond and overflow the sidewalk and plaintiff's property.
Exercising the discretion vested in us under Article 906 of the Code of Practice, it is ordered that the judgment appealed from be and the same is hereby avoided, annulled and reversed; and the case is remanded to the Fourteenth Judicial District Court for the Parish of Calcasieu for trial consonant with the views herein stated; the costs of this appeal to be paid by defendant, all other costs to await the final termination of the suit.
Reversed and remanded. *Page 486