175 So.2d 856 (1965)
ACADIA-VERMILION RICE IRRIGATING COMPANY, Inc., Plaintiff and Appellant,
v.
Gustave BROUSSARD and Joseph Hayes Broussard, Defendants and Appellees.
No. 1411.
Court of Appeal of Louisiana, Third Circuit.
June 2, 1965.
*857 Kibbe, Edwards & Cooper, by Silas B. Cooper, Jr., Abbeville, Monroe & Lemann, by T. B. Lemann, New Orleans, Pugh, Buatt & Pugh, by Lawrence Pugh, Crowley, for plaintiff-appellant.
Bean & Rush, by James W. Bean, Lafayette, for defendants-appellees.
Before FRUGE, CULPEPPER and HOOD, JJ.
HOOD, Judge.
Acadia-Vermilion Rice Irrigating Company, Inc., instituted this action against Gustave Broussard and Joseph Hayes Broussard, seeking a judgment recognizing plaintiff as the owner of a servitude for irrigation purposes over and across lands owned by the defendants, and enjoining defendants from interfering with plaintiff's use of a canal located on those lands for irrigation purposes. The trial judge sustained an exception of no right or cause of action which was filed by defendants, and plaintiff has appealed.
Although the exception is labelled an "exception of no right or cause of action," the judgment rendered by the trial court was based solely on the conclusion that the facts alleged by plaintiff in its petition did not state a cause of action. We construe the pleading filed by defendants, therefore, as an exception of no cause of action, and the judgment of the trial court as sustaining such an exception.
For the purpose of determining the issues raised by an exception of no cause of action, all well-pleaded facts in the petition must be accepted as true. As we stated in Babineaux v. Southeastern Drilling Corporation, 170 So.2d 518, "an exception of no cause of action must be overruled unless the showing affirmatively establishes that under no evidence admissible under the pleadings does the plaintiff have a cause of action; that is, unless the allegations' showing excludes every reasonable hypothesis of facts other than those showing that the plaintiff cannot recover as a matter of law."
In a detailed and well-prepared petition, plaintiff alleges that from 1903 until 1943 The Hunter Canal Company operated an irrigation system for irrigating rice lands in Vermilion Parish, Louisiana; that on September 11, 1943, plaintiff acquired from The Hunter Canal Company all of its title and interest "in and to its property rights, realties and servitudes, aqueducts and irrigation rights" in said parish; and that since the last-mentioned date plaintiff has operated that irrigation system for irrigating rice lands in Vermilion Parish. The irrigation system which has been operated by plaintiff since 1943, and which was operated prior to that time by The Hunter Canal Company, consists of a main line irrigation canal, running from Bayou Vermilion in a westerly direction a distance of approximately fifteen miles, together with a number of "lateral irrigation aqueduct canals" which connect with and lead from the main distribution canal. Plaintiff alleges that its predecessor, The Hunter Canal Company, "did acquire titles and rights-of-way to the land on which said main distribution canal was constructed."
The canal, or servitude, which is at issue in this suit is a lateral canal which joins or connects with the south side of the main distribution canal, and from that junction it runs in a southerly direction over and across lands owned by the defendants, and it continues southward over and across other lands. One of the defendants, Joseph Hayes Broussard, owns a 20.71-acre tract of land which is located immediately south of and adjoins the main irrigation canal. The other defendant, Gustave Broussard, owns a tract of land containing the same number of acres which is located immediately south of and adjoins the Joseph Hayes Broussard tract. The lateral canal here in question traverses the lands owned by both of these defendants, running almost through the center of each of said tracts, and it continues southward a distance of more than one-half mile further, running over and *858 across lands owned by at least seven other persons who are not parties to this suit.
Plaintiff alleges that for more than thirty years it, and its author-in-title, have owned, maintained, operated and used, without interruption, the above-mentioned lateral canal which traverses defendants' lands, which lateral canal is described in the petition as "a lateral aqueduct servitude for irrigation purposes." It alleges that during these years it has furnished water each year for irrigation purposes, on a share basis, to each of the landowners or their tenants on the lands traversed by such lateral water-course. It alleges that it and its author-intitle have been in actual, continuous, peaceable, quiet, open, notorious, adverse and undisturbed physical possession of, and have used, said servitude for more than thirty years, that during that period the aqueduct canal was enclosed by levees above the ground, clearly marking the extent of the servitude, and that its use of the canal on said strip of land has been apparent and continuous for that entire period of time.
Plaintiff further alleges that the defendants have recently had an irrigation well dug on the land owned by Joseph Hayes Broussard, and that they have started pumping water from that well into the lateral canal on defendants' property, which canal was constructed and has been used by plaintiff for the purpose of irrigating lands planted to rice, and that defendants thereby are depriving plaintiff of its property rights and the profits which it might make in the operation of its irrigation system.
Plaintiff does not allege that it or its predecessor in title ever acquired formal title to the land which is affected by this lateral canal. It does allege that it has had peaceful and undisturbed possession of this canal, and that it has used it for irrigation purposes for more than ten years. It contends that the use of this canal constitutes the use of a continuous and apparent servitude, and that plaintiff has acquired a servitude for irrigation purposes over and across defendants' lands by prescription of ten years, under the provisions of Article 765 of the Revised Civil Code. Plaintiff demands judgment recognizing it as the owner of a servitude for irrigation purposes over and across the property owned by defendants and enjoining defendants from interfering with the exercise by plaintiff of its rights under such a servitude.
Article 765 of the Revised Civil Code provides that "continuous and apparent servitudes may be acquired by title or by a possession of ten years." And Article 766 provides that "* * * discontinuous servitudes, whether apparent or not, can be established only by a title."
In the instant suit, all parties agree that the servitude at issue here is "apparent," and that it has been apparent for more than ten years. See R.C.C. Article 728. The parties disagree, however, as to whether it is a "continuous" servitude, as that term is used in the Civil Code. Plaintiff contends that it is a continuous servitude, and thus may be acquired by prescription of ten years, while defendants maintain that it is discontinuous, and not susceptible to being acquired by prescription.
Plaintiff concedes that in furnishing water to the rice farmers in that area it has been the practice for it to pump water from Bayou Vermilion into the main irrigation canal. A "gate" is located at the junction of the main canal and the lateral here in dispute, and when that gate is opened water flows from the main canal into the lateral by gravity, and then it is diverted to the rice lands of plaintiff's customers. Defendants argue that since water must be pumped into the main irrigation canal, and the gate must be opened before water can flow into the lateral which is at issue here, an "act of man" is required to use the lateral canal for irrigation purposes, and thus it is a discontinuous servitude which cannot be acquired by prescription.
*859 Continuous and discontinuous servitudes are defined in Article 727 of the Revised Civil Code as follows:
"Servitudes are either continuous or discontinuous.
"Continuous servitudes are those whose use is or may be continual without the act of man.
"Such are aqueducts, drain, view and the like.
"Discontinuous servitudes are such as need the act of man to be exercised.
"Such are the rights of passage, of drawing water, pasture and the like." (emphasis added)
An "aqueduct" is defined in Article 724 of the Civil Code as:
"The conducting of water or aqueduct is the right by which one conducts water from his estate through the land of his neighbor by means of an aqueduct or ditch."
Plaintiff contends that the lateral canal here in question is an "aqueduct," as that term is defined and used in the Civil Code, and that under the provisions of R.C.C. Article 727 it must be classified as a continuous servitude.
The word "aqueduct" has been defined by other authorities as follows:
"The word is used in the sense of the Latin words from which it is derived [`aqua,' water, and `ducere,' to lead] and is intended to include all those means by which water is led from a source of supply to the user; and has been specifically defined as a conduit or channel for conducting water from one place to another; a water carrier, or to be more exact, a water leader." (6 C.J.S., "Aqueduct," p. 143)
"A conduit or artificial channel for conveying water; one for carrying a large quantity of water which flows by gravitation." (Webster's Third New International Dictionary)
"Aqueduct. 1. a. Any conduit for water, esp. one for a large quantity of flowing water, b. A structure for conveying a canal over a river or hollow." (Webster's New Collegiate Dictionary)
"A conduit or artificial channel for conducting water; esp., a structure for conducting a water-supply from a distance; * * *" (The New Century Dictionary, Vol. One, 1959)
We think a canal or artificial channel, such as the one at issue here, which has been dug or constructed on the surface of a tract of land, and which is used to conduct water over and across that tract for irrigation purposes, is an "aqueduct," as that term is used and defined in Articles 721, 724, 727 and 728 of the Louisiana Civil Code.
Defendants argue, however, that even though the watercourse in dispute here is considered as an aqueduct, it nevertheless is not a "continuous" servitude, and thus it is not a servitude which can be acquired by prescription. In support of that argument they rely upon statements in Planiol, Traite Elementaire DeDroit Civil, and on the cases of Ogborn v. Lower Terrebonne Refining & Manufacturing Company, 129 La. 379, 56 So. 323; Lovecchio v. Graffagnini, La.App.Orl., 90 So.2d 694; and Buras Ice Factory, Inc. v. Department of Highways, 235 La. 158, 103 So.2d 74.
In the Ogborn case the question presented was whether a servitude of "passage" by means of a tram road could be acquired by prescription, and it was held that in view of the provisions of R.C.C. Article 727, such a servitude could not be acquired in that manner. In the Buras case it was determined that a servitude of "passage" by boat over an existing canal was a discontinuous servitude, and that such a right could not be acquired by prescription. Both of those cases related to servitudes of "passage," *860 while the instant suit involves a servitude of aqueduct. There is a substantial difference between these two types of servitudes, Article 727 of the Civil Code listing the right of "passage" as an example of a discontinuous servitude, and that of aqueduct as an example of a continuous servitude. Because of the difference in these two types of servitudes, we feel that the Ogborn and Buras cases are not applicable here. In the Lovecchio case the question was presented of whether a servitude to use a shed or storeroom on another's property may be acquired by prescription. The servitude involved in that case differs in nature from the one involved here to such an extent that we consider the Lovecchio case also to be inapplicable.
Article 727 of the Louisiana Civil Code has as its source Article 688 of the French Code. This article of the French Code is discussed in Planiol, Traite Elementaire DeDroit Civil, Vol. 1, Part 2, Sections 2894 to 2899, inclusive. The following are some of the significant statements contained in this treatise:
"Sec. 2894. Art. 688 defines continuous servitudes as `those whose use is or may be continual without requiring man's intervention.' This definition that could be criticised (infra no. 2896) contains, at all events, the essential idea. This is that continuous servitudes operate without man's intervention, that is to say their exercise does not require successive and repeated acts by the owner of the dominant estate. This grows out of the fact that they consist of a certain state of affairs, favorable to one of the estates, which once established, lasts indefinitely and through it procures the profit flowing from the servitude.

"Ordinarily this state of the premises arises from man's works, as is the case with servitudes of view and aqueduct. But this is not necessary. Thus the servitude not to build or not to plant assumes, on the contrary, the absence of works. It consists in permitting the land to remain bare. In all these cases, the exercise of the continuous servitude grows out of a factual state of affairs. It may be natural or artificial, but it is permanently established. And it may be said that, when once the premises have been arranged as contemplated, the servitude operates of itself, without the owner's intervention. The water flows in the aqueduct, the window lets in the light, etc.

"Discontinuous servitudes are those whose exercise require man's intervention. They consist essentially in the possibility of the owner of the dominant estate performing certain acts on the servient estate. This brings out that if the owner does not act, no use is made of the servitude and it is useless. Such are servitudes of passage, drawing water, extracting materials, etc."
"Sec. 2895. ExamplesContinuous Servitudes. The law cites (Art. 688) the servitude of view (windows, balconies nearer the neighboring property than the law allows); the servitude of aqueduct (water conduits across another's land) * * *
"Discontinuous Servitudes. The servitudes of passage, wells, extraction of materials, washing, pasturage, watering stock, etc. These servitudes are discontinuous, even though certain permanent works are made to facilitate their exercise, such as the construction of a washing basin, or a drinking trough (Cass., 4 Dec. 1888, D.89. 1. 193, S.90. 1. 105). Once the passage is open, the water runs itself, without further act of man."
"Sec. 2896. * * * The drain of rain water is a continuous servitude, and yet, in dry countries but little use is made of it. On the other hand, the flow of water from a quarry or a mine, whose discharge pipe works day and *861 night, and all the year without interruption is a discontinuous servitude. It is so classed because its exercise requires man's intervention. If the engineer in charge did not operate his machine, the water would cease flowing. The flow of water may thus be continual or very infrequent, without this circumstance having any bearing upon the continuous or discontinuous nature of the servitude. This nature depends exclusively upon man's abstention in the exercise of the servitude. It is just as Cepolla said in the XV century: `Licet non exerceatur semper, tamen semper apta est exerceri sine facto hominis.'" (emphasis added)
In a footnote to a statement in Section 2895 (Planiol, Footnote 3, page 703), there appears the following significant observation:
"It has been held that the servitude of aqueduct retains its character of being a continuous servitude even if the aqueduct had a flood-gate, or a sluice, that had to be raised to permit the flow of the water (Cass., Oct. 25, 1887, D.88. 1, 106; Nov. 22, 1892, D.94. 1.45; Nov. 23, 1898, D.99. 1. 37). Once the passage is opened the water flows of itself without man's intervention." (emphasis added)
Defendants argue that the servitude which is claimed here is comparable to the "flow of water from a quarry or a mine," as mentioned in Section 2896 of Planiol, and thus is a discontinuous servitude. Plaintiff, on the other hand, contends that the above quoted footnote clearly supports its position that the servitude is continuous, as does the statement in Section 2894 to the effect that a discontinuous servitude consists essentially in the possibility of the owner of the dominant estate "performing certain acts on the servient estate," it being argued that it is not essential that plaintiff in this suit perform any acts on the servient estate in order to exercise the servitude claimed here.
Although this precise question has not been determined by an appellate court of this state, we think the issues presented in Fuller, et al. v. Washington, La.App. 2 Cir., 19 So.2d 730, are similar in principle to those which are presented here. In the Fuller case it was held that a sewer line constructed over an adjoining tract of land was a continuous apparent servitude, and as such it was subject to acquisition by prescription of ten years under R.C.C. Article 765. In so holding, the court said:
"* * * There appears to be nothing in the codal provisions which would indicate that the character of a servitude as to whether it be continuous requires unceasing operation. Rather, the articles dealing with this point specifically denominate aqueducts and drains as being illustrative of continuous servitudes. Surely it cannot be asserted that water must perpetually and unceasingly flow through an aqueduct or drain in order to meet the requirements and fulfill the definition of continuous servitude.
"It has long been settled that continuous servitudes are not simply natural occurrences, but may be actually created and constructed through the agency of man. Greco v. Frigerio, 3 La.App. 649; Kennedy v. Succession of McCollam, 34 La.Ann. 568.
"Under the unambiguous definitions of Articles 727, 724 and 728 of the Civil Code, as well as under the jurisprudence interpreting these articles, there can be no question but that the sewer line involved in this cause was a continuous, apparent servitude, and, as such, subject to acquisition by prescription of 10 years under Article 765 of the Civil Code."
We cited the Fuller case with approval in Hale v. Hulin, La.App. 3 Cir., 130 So.2d 519. It also was relied on in Efner v. Ketteringham et ux., La.App. 2 Cir., 41 So.2d 130.
*862 The servitude of drain is similar in many respects to that of aqueduct. And it has been held consistently that the servitude of drainage, even when accomplished by means of artificial channels or canals, is a continuous apparent servitude which may be acquired by prescription of ten years. See Hale v. Hulin, supra; Efner v. Ketteringham, supra; State ex rel. Wood v. Pinder, La.App. 1 Cir., 41 So.2d 479; Levet v. Lapeyrollerie, 39 La.Ann. 210, 1 So. 672; and Kennedy v. Succession of McCollam, 34 La.Ann. 568.
In State ex rel. Wood v. Pinder, supra, which involved a servitude of drain, the court said:
"According to Article 727 and 728 of the Revised Civil Code, the servitudes of aqueducts or ditch and/or drain are continuous apparent servitudes. Such servitudes can be acquired by the prescription of ten years. Kennedy v. Succession of A. & S. McCollam, 34 La.Ann. 568. Article 767 of the Revised Civil Code provides that `The destination made by the owner is equivalent to title with respect to continuous apparent servitudes.'"
The general rule in other jurisdictions seems to be that the right to maintain an artificial watercourse over the lands of another for irrigation purposes may be acquired by prescription. In Corpus Juris Secundum, for instance, the following observations are made:
"The right to maintain a ditch or or other artificial watercourse over the lands of another may be acquired by prescription, founded on open and hostile possession and use continued for the requisite length of time; the use, in such a case, must have been hostile under a claim of right, with the knowledge of the owner of the land, and it must have been actual, open and notorious, exclusive, and, while it is necessary that it have been continuous, it need not have been constant." (93 C.J.S. Waters § 130b(2) p. 848)
"* * * A right of way for irrigation purposes may be acquired by prescription, provided the essentials of a prescriptive title are proved, * * *" (94 C.J.S. Waters § 349a(3), p. 390)
And in American Jurisprudence, the general rule is stated as follows:
"The established rule that easements may be acquired by prescription is applicable to easements for the conveyance of water for irrigation. Thus, if an irrigation ditch is used openly and notoriously for the statutory period with the full knowledge of the owners of the lands whence the water was diverted and through which the ditch was maintained, and without anything to indicate that their consent was obtained or sought, this is sufficient to sustain a finding of prescriptive title * * *" (30 Am.Jur., "Irrigation," Sec. 82, p. 907)
After considering all of the authorities hereinabove cited, we have concluded that the servitude of aqueduct for irrigation purposes, which is claimed by plaintiff in this suit, must be classified as a continuous and apparent servitude, and that as such it can be acquired by prescription of ten years under the provisions of R.C.C. Article 765. We confess that we experienced some difficulty in rationalizing the holding in Fuller v. Washington, supra, with the decision rendered in Ogborn v. Lower Terrebonne Refining & Manufacturing Company, supra, although one of those cases deals with a servitude of passage, and the other a servitude of sewerage. We believe, however, that those cases can be reconciled with each other completely by applying the test which was set out in a comment by Aubry & Rau on the articles of the Code Napoleon, which comment was quoted with approval in the Ogborn case.
*863 A portion of that comment reads as follows:
"`Discontinuous servitudes are those which need the act of man to be exercised. What characterizes them is that there exercise does not survive the act of man; it ceases the moment this act ceases. Such is the servitude of way; it is exercised each time the owner of the dominant estate passes over the servient estate, and only during the time occupied in his passing. The law cites as additional examples servitudes of drawing water, of pasturing cattle.'" (56 So. 323) (emphasis added)
We agree with that comment. Based on the same reasoning, we think the circumstance which characterizes a continuous servitude is that its exercise does survive the act of man; it does not cease the moment that act ceases; and the servitude continues to be exercised after the owner of the dominant estate ceases to occupy or be on the servient estate. In the instant suit the allegations in the petition indicate that when water is in the main canal, and the gate leading from that canal to the lateral here at issue has been opened, water will flow into the lateral canal on defendants' property, and the servitude of aqueduct for irrigation purposes on defendants' land will continue to be exercised after plaintiff has ceased to occupy or to be on the servient estate. The servitude, therefore, "may be continual without the act of man," as provided in R.C.C. Article 727, and thus is a continuous servitude.
We are convinced that the facts alleged in plaintiff's petition, if established by the evidence, are sufficient to entitle plaintiff to at least a part of the relief which it seeks. For that reason, we conclude that the trial judge erred in sustaining the exception of no cause of action filed by defendants.
We find no merit to defendants' further argument that the petition fails to state a cause of action because plaintiff seeks the exclusive right to use the canal. It is alleged that the actions of defendants will deprive plaintiff of its right to operate its irrigation system, and that it will prevent plaintiff from complying with its contractual obligations to furnish water for irrigation to other rice growers along that lateral. Under these allegations, we think plaintiff is entitled to a trial on the merits. It is not necessary for us to consider now whether plaintiff should or should not have the exclusive right to use the lateral canal if the facts alleged are proved, and accordingly we make no determination of that issue at this time.
For the reasons herein assigned, the judgment appealed from is reversed. The exception of no right or cause of action filed by defendants is overruled, and the case is remanded to the trial court for further proceedings consistent with the views herein expressed. The costs of this appeal are assessed to defendants-appellees.
Reversed and remanded.