191 So.2d 146 (1966)
Zelda Hight WILD, Plaintiff-Appellee,
v.
J. Hillard LeBLANC, Sr., Defendant-Appellant.
No. 1787.
Court of Appeal of Louisiana, Third Circuit.
October 20, 1966.
*147 Saal & Saal, by I. P. Saal, Jr., Gueydan, for defendant-appellant.
Aaron & Aaron, by J. Donald Aaron, Crowley, for plaintiff-appellee.
Before TATE, FRUGÉ and SAVOY, JJ.
TATE, Judge.
The plaintiff Wild sues to obtain recognition of a servitude of drain through a ditch over the defendant's land. The defendant LeBlanc appeals from judgment in the plaintiff's favor. The judgment ordered LeBlanc to remove dirt and other obstructions from the ditch so as to allow Mrs. Wild's full use of it.
By his appeal the defendant LeBlanc urges that the Wild tract does not enjoy the servitude of drain recognized by the trial court, since any natural drainage from the Wild land has been made much more burdensome by the rice irrigation waters artificially pumped into the Wild field. Additionally, LeBlanc urges that the Wild tract could not by prescription have acquired a servitude for the drainage of these additional rice irrigation waters, because the acts of draining same were discontinuous and thus not of a nature to result in prescriptive title.
The facts are essentially undisputed:
The Wild and LeBlanc tracts are contiguous. For several decades both have been used for the cultivation of rice. For over thirty years, the water from the higher Wild tract has been drained through a 300-foot ditch across the LeBlanc tract into a large drainage canal. The ditch has been used to drain both the natural rainfall and also the irrigation waters pumped onto the Wild land for rice irrigation purposes.
The evidence shows that, in rice cultivation, in alternating years a crop is grown and then the land is "rested". In the case of the Wild tract, the land was used to grow rice for two years and then rested for the succeeding two years through soil-building pasture crops grown in the former rice fields.
The ditch across the LeBlanc land led from a cut in a levee which separated the Wild and the LeBlanc tracts. In the years that rice was grown, this gap would be closed for three to four months in order to impound the waters used to flood the growing rice. The cut would be reopened when it became time to harvest the rice, to let the impounded waters flow out the gap *148 and then through the ditch across the LeBlanc field.
This suit was precipitated when, about three years ago, the defendant LeBlanc completely filled in the ditch across his tract. As a result, the Wild estate can no longer drain its rice irrigation and other waters through the cut in the levee.
Aside from any natural servitude of drain under LSA Civil Code Article 660 (see below), the evidence shows that the Wild estate has acquired by prescriptive use a conventional or voluntary servitude, see LSA-CC Art. 709, of drain through the ditch across the LeBlanc tract.
Under LSA-C.C. Art. 765, "Continuous and apparent servitudes may be acquired by title, or by a possession of ten years. * * *" See Comment, Acquisitive Prescription of Servitudes, 15 La.L. Rev. 777 (1955). The servitudes of drain and aqueduct are noted by our Civil Code as examples of continuous servitudes.[1]
The evidence shows that the ditch was in existence across the LeBlanc estate for far more than the prescriptive ten years. The evidence does not reflect any alteration in the use of the servitude over the years which has made it more burdensome, so as to entitle the LeBlanc estate to a restriction to its original prescriptive use, see LSA-C.C. Arts. 743, 779.
The Louisiana Civil Code, unlike its French predecessor, specifically defines the voluntary servitude of drain: "The right of drain consists in the servitude of passing water collected in pipes or canals through the estate of one's neighbor. * * *" LSA-C.C. Art. 714.[2] This servitude is similar to that of aqueduct (i. e., of conducting water to one's estate from another's "by means of an aqueduct or ditch", LSA-C.C. Art. 724); Acadia-Vermilion Rice Irrigating Co. v. Broussard, La.App. 3 Cir., 175 So.2d 856.
In both instances, the Louisiana jurisprudence holds not only that the servitude of drain through a ditch and of aqueduct through a canal are "apparent",[3] since perceivable by exterior works; but also that they are "continuous". Thus, possession of the drainage or aqueduct use for ten years results in acquisition of a prescriptive title burdening the servient estate in favor of the dominant estate. See: Acadia-Vermilion Rice Irrigating Co. v. Broussard, La.App. 3 Cir., 175 So.2d 856; Hale v. Hulin, La.App. 3 Cir., 130 So.2d 519.
These decisions and others cited by them recognize that, even though acts of man may regulate the flow of water through the ditch or canal, the servitude is "continual without the act of man" in the sense that it may be used uninterruptedly without the act of man. That is, the servitude's *149 continued use servives the act of man: "it does not cease the moment that act ceases; and the servitude continues to be exercised after the owner of the dominant estate ceases to occupy or be on the servient estate." Acadia-Vermilion decision at 175 So.2d 863; see perceptive Note, 40 Tul.L.Rev. 397 (1966).
We therefore do not agree with the appellant's contention that the use of the drainage ditch for rice irrigation purposes was "discontinuous" within the meaning of the jurisprudence and thus incapable of being acquired by prescription.
We will therefore affirm the trial court judgment recognizing the Wild estate's prescriptively-acquired servitude of drain through the former drainage ditch, including that portion of the decree ordering the defendant LeBlanc to remove the dirt and other obstructions which hamper the plaintiff's use of the servitude acquired by the plaintiff's estate.
In oral argument, an additional complaint was made that the drainage of rice irrigation waters from the Wild estate not only proceeds through the ditch but also overflows onto the surrounding land beyond the visible exterior works of the ditch. The thrust of LeBlanc's complaint is that this overflow from the drainage ditch substantially hampers his use of his land and amounts to an undue aggravation of any burden of natural drainage his estate might be required to bear under LSA-C.C. Art. 660.[4]
By reason of the prescriptively-acquired servitude of drain, the LeBlanc estate is burdened with the drainage of the rice irrigation waters through the ditch. Any periodic overflow, it is suggested, could not be "apparent" (see Footnote 3), even if "continuous"; thus, the overflow drainage right could not be acquired by prescription as might be the right to use the ditch itself for drainage purposes.
As we see it, the chief practical effect of the periodic overflow being within or without a servitude of drain owed by LeBlanc to Wild, is this: If it is not within the drainage servitude, then, by levee or otherwise, the Wild estate must protect the LeBlanc field from overflow outside the bounds of the drainage ditch; if the overflow is included in such a servitude, then the LeBlanc proprietor must do so, if he desires to prevent the overflow onto his fields.
Nevertheless, the extent of any natural servitude is not before us for determination. As the issues are framed by the present pleadings, we cannot consider whatever merit there may be to the defendant's interpretation of Article 660, see Planiol, Civil Law Treatise, Volume 1, Section 2903 (LSLI Translation, 1959), or whatever difficulties to it may be suggested by contrary expressions in the decisions of perhaps distinguishable facts, Broussard v. Cormier, 154 La. 877, 98 So. 403; State ex rel. Wood v. Pinder, La.App. 1 Cir., 41 So.2d 479.
The issues are not before us because the allegations and prayer of the plaintiff's petition pray only for a recognition of her servitude of drainage "through the ditches". The only servitude recognized by the trial court was through a described ditch. The thrust and prayer of the defendant's answer is a denial that his land is burdened with a servitude to accept the drainage of any artificially added rice irrigation waters whatsoever. Except for a fleeting ambiguous reference to overflow (Tr. 85), the evidence emphasizes only the drainage or not of the water through the drainage ditch.
*150 We note these circumstances at such length because the oral argument was chiefly directed to this issue. Since it is not before us in the present case, our present decision is without prejudice to the right of the parties to raise the issue in other proceedings.
For the foregoing reasons, we affirm the judgment of the District Court which recognizes the plaintiff Mrs. Wild's servitude of drain through a ditch and orders the defendant LeBlanc to remove obstructions to its use. The defendant-appellant is to pay the costs of this appeal.
Affirmed.
NOTES
[1] Article 727 provides:

"Servitudes are either continuous or discontinuous.
"Continuous servitudes are those whose use is or may be continual without the act of man.
"Such are aqueducts, drain, view and the like.
"Discontinuous servitudes are such as need the act of man to be exercised.
"Such are the rights of passage, of drawing water, pasture and the like." (Italics ours.)
[2] Although this is denoted as an "urban" rather than a rural servitude, there is no practical distinction between this differentiation established in the Roman Law. Planiol, Civil Law Treatise, Volume 1, Section 2893 (LSLI Translations, 1959).
[3] LSA-C.C. Art. 728 provides:

"Again, servitudes are either visible and apparent or nonapparent.
"Apparent servitudes are such as are to be perceivable by exterior works; such as a door, a window, an aqueduct.
"Non-apparent servitudes are such as have no exterior sign of their existence; such, for instance, as the prohibition of building on an estate, or of building above a particular height."
[4] Article 660 provides:

"It is a servitude due by the estate situated below to receive the waters which run naturally from the estate situated above, provided the industry of man has not been used to create that servitude.
"The proprietor below is not at liberty to raise any dam, or to make any other work, to prevent this running of the water.
"The proprietor above can do nothing whereby the natural servitude due by the estate below may be rendered more burdensome." (Italics ours.)