LAND, J.
This is a petitory act to recover a tract of land containing about 200 acres, with all the buildings and improvements thereon, with rentals at the rate of $175 per month from January 1, 1906, until paid.
The defendant pleaded the general issue, and, in the alternative, that all the buildings on the tract, except two, were the property *785 of the defendant, and were originally erected on the premises by defendant’s authors with the consent of the then owners of the land. Defendant alleged that the buildings were worth $20,000, which amount defendant claimed in reconvention.
The case was tried, and there was judgment in favor of the plaintiff for the land and all improvements thereon, and for rents at the rate of $175 per month from September 15, 1909, until paid. Defendant has appealed.
In this court the defendant does not contest plaintiff’s title to the land, but claims all the buildings thereon, except two residences, as a possessor in good faith, holding title from the Gulf Land & Lumber Company, which, it is alleged erected the said buildings under an agreement with Thomas Stables, the owner of the land, and at the same time an officer of said company.
Plaintiff claims title by mesne conveyances from Thomas Stables. In August, 1907, Stables and wife granted and sold the land in question, “together with all buildings, structures, and improvements thereon” to Elliott Cage, for $10 cash, and the cancellation and surrender of two certain notes for $7,500 each, secured by mortgage on the same premises, as shown by notarial act of date August 5, 1905, signed by Thomas Stables and wife.
This act was duly inscribed in the mortgage office on September 12, 1905. In September, 1906, Harry Masterton, as holder of said two mortgage notes, instituted ex-ecutory process against Thomas Stables to foreclose the mortgage. The Gulf Land & Lumber Company, in March, 1907, intervened, claiming the ownership of all the buildings on the premises, and caused notice of the pendency of the intervention to be duly recorded. This intervention was never tried. The plaintiff in the suit transferred the notes to Cage, and abandoned the executory proceedings. As above stated, Cage, took the mortgage premises in payment of the mortgage notes.
The evidence tends to show that the houses in dispute were erected during the' year 1905, and that the land mortgaged, less than 200 acres, was worth a few dollars per acre. It is evident that the mortgage of August 5, 1905, by Thomas Stables, then owner, to secure the sum -of $15,000-with interest, was based mainly on the value of the improvements. The mortgage’ covered the land, “together with all improvements and appurtenances thereto in any wise-belonging.” Masterton and Cage loaned Stables, $15,000, and took mortgage notes. At that date, the Gulf Land & Lumber Company had no title of record to the houses now claimed by defendant. In August, 1907, Stables sold the same land, with all buildings, improvements, and structures thereon, to Cage. In September, 1909, Cage sold the-same property to the W. H. Powell Lumber Company; and on April 11, 1911, said company sold the same land, “together with all buildings, structures and improvements thereon” to the Louisiana Land & Pecan Company,, plaintiff herein.
On April 24, 1907, the Gulf Land & Lumber Company sold and conveyed to the Gulf Lumber Company a large number of tracts of land, and all the timber on a large number of other tracts. This sale was made by virtue of a resolution of the board of directors, of the vendor company authorizing its president to sell all of its assets of every kind,, nature, and description, wheresoever situated. We, however, find in the record no sale or transfer of any kind, by said company, of the buildings and structures on the land in controversy. In fact, the ownership of these improvements was at that time in litigation in the foreclosure suit of Masterton v. Stables, in which the Gulf Land & Lumber Company had intervened, alleging that all *787 of said buildings had been erected by intervener upon the lands oi Stables, with his consent, at a cost of $12,600.
There is no written evidence of any kind in the record to show any consent or agreement between Stables and the Gulf Land & Lumber Company, as alleged in the intervention of said corporation.
There is no written sale or transfer of the buildings in question from the Gulf Land & Lumber Company to the defendant company to be found in the record.
The defendant in its answer admits that it has no claim to the two residences on the land in controversy. In the intervention above mentioned, one of these residences was valued at $5,000.
As above stated, Stables mortgaged the premises on August 5, 1905, to secure two notes of $7,500 each. This mortgage was duly recorded on September 12, 1905. Masterton and Cage acquired these notes later in the same year.
[2] “The conventional mortgage, when once established on an immovable, includes all the improvements which it may afterwards receive.” Civil Code, art. 3310.
“Lands and buildings or other constructions, whether they have their foundations in the soil or not are immovable by their nature.” Civil Code, art. 464.
[I] All contracts affecting immovables, if not duly recorded are “utterly null and void, except between the parties.” Civil Code, art. 2266.
It follows, from these codal provisions, that the plaintiff holds the legal title to the land and buildings by a duly recorded chain of conveyances; and that the defendants’ alleged title to the buildings, never having been recorded, is “utterly null and void” as against the plaintiff.
If defendant had purchased the land and buildings from Stables, and had not recorded his title, the result would be the same. See McDuffie v. Walker, 125 La. 152, 51 South. 100.
The Gulf Land & Lumber Company is not a party to the suit, and appears, inferentially from defendant’s pleading and evidence, to be a defunct corporation.
The recording of the notice of the filing of the intervention of the Gulf Land & Lumber Company in the abandoned suit of Master-ton v. Stables, cannot affect the question of the title of the defendant in the present suit to the buildings in controversy.
[3] All constructions made on the soil are supposed to be done by the owner, and at his expense, and to belong to him, unless the contrary be proved. Civil Code, art. 506.
Defendant constructed none of the buildings on the premises, and has no record, or-even written title, to them.
The plaintiff was subrogated to the claims of its vendor, the Powell Lumber Company, against third persons for rents and revenues.
Judgment affirmed.