**OUACHITA PARISH SCHOOL BOARD v. CLARK.**

No. 35951.

Feb. 3, 1941.

On Rehearing March 7, 1941.

Frank W. Hawthorne, Dist. Atty., and Geo. W. Lester, Asst. Dist. Atty., both of Monroe, for plaintiff and appellant.

J. B. Dawkins, of Monroe, for defendant and appellee.

ODOM, Justice.

This is an expropriation proceeding brought by the Parish School Board of Ouachita Parish to acquire 5.923 acres of land owned by the defendant Clark. The school board alleged that in November, 1938, it entered into a contract for the construction of a gymnasium and auditorium for use in connection with the Okaloosa High and Grammar Schools, located in a rural section of the parish, which building was completed and accepted in May, 1939, and that the cost of the building was $25,-400.

The board further alleged that it owned three acres of land on which the Okaloosa School buildings were situated, and that it was the intent and purpose of the board to construct the new building on the three-acre tract of land owned by it, but that, through a misunderstanding as to the exact location of the boundaries of said three-acre tract of land, part of the new building extended over the boundary line of the property belonging to the board and onto land owned by the defendant Clark, and that the board constructed a septic tank to be used in connection with the new structure, which was also placed on land belonging to the defendant.

The board further alleged that it was unaware that said building and septic tank encroached upon the land of Clark until the building was practically completed, at which time it was impossible to remove the structures onto the land belonging to the school board without demolishing them. Alleging that the original three-acre tract on which the school buildings were situated had become entirely inadequate and that additional land was necessary to accommodate the new structures and to provide a playground for the students, and that the 5.923 acres of the Clark land described in the petition was the only suitable property available for the purposes for which it was sought, and that said land was needed by the school board for a public use and that the same was a public necessity; and further alleging that its negotiations with the landowner to acquire the property amicably had failed, the board prayed that the property be expropriated and adjudged to it, and that a jury of freeholders be impaneled for the purpose of assessing the value of the property and fixing the amount of the damages, if any, to the remainder of defendant's property.

Clark, the defendant, filed an exception of prematurity and also an exception of no cause of action. These exceptions were overruled by the court.

Defendant then filed answer in which he denied that the board owned only three acres of land adjoining his property and averred that the board owned 13 acres adjoining his land. He admitted that the gymnasium and auditorium was constructed partly on his land, but denied that it was so constructed thereon through any misunderstanding as to the location of the boundaries between the property owned by the school board and that owned by him. He further alleged in his answer that he notified the contractor, the members of the school board, and also the superintendent of schools for the Parish of Ouachita immediately upon the beginning of said work, and before any part of the foundation had been laid, that same was being constructed on his property, and requested them to change its location.

Defendant admitted that the attendance at the Okaloosa School had constantly increased and that additional buildings had been constructed theretofore as required for the accommodation of the pupils attending the school. But he alleged that there was then ample room on the property owned by the board for the construction of the new works, and that no additional

land was necessary either for the buildings or for the playground. He further alleged that the school authorities had full knowledge when they entered upon his property that the same was not part of the land which the board owned, and that therefore the board was a trespasser in bad faith.

Defendant alleged in Paragraph 12 of his answer:

"* * * that any improvements so constructed on his land are now of right his property, which he may dispose of as best suits his wishes, and that if expropriation is permitted in this case, he is entitled to a valuation based upon the land described in Plaintiff's petition as of the date these proceedings were filed, which. your Defendant . avers to be as follows: $1200.00 for 5.923 acres as described in Plaintiff's petition; $12,700 for his interest in gymnasium and auditorium buildings; $50.00 for septic tank and accessories; $100.00 for garage building; and further judgment in the full sum and amount of $500.00 as damages occasioned by the necessity to employ counsel in this case."

Defendant prayed that plaintiff's suit be dismissed and that he had judgment in reconvention ordering the Ouachita Parish School Board to remove from his premises the gymnasium and auditorium, and in the alternative that, if the board be permitted to expropriate the property, he be compensated for the land and the improvements thereon situated in the amount of $14,500.

A jury of freeholders was impaneled as the law directs and after trial rendered a verdict in favor of the defendant for $1,200,

the value of the land expropriated, and rejected all other demands made by him; whereupon the court rendered and signed a final judgment, adjudging the property described in plaintiff's petition and as shown by the plat, or blueprint, attached thereto "to the plaintiff, Ouachita Parish School Board, in fee simple, for its uses and purposes, free and clear of all mortgages and encumbrances of every nature, kind and description whatsoever, upon the payment by it to the defendant, A. J. Clark, of the sum of Twelve Hundred Dollars ($1200.00), in the manner and form provided by law".

The school board appealed from the verdict and judgment in so far as the value of the land was fixed at $1,200, or approximately $200 per acre, the school board's contention being that this valuation was excessive.

The defendant has answered the appeal, alleging that the trial judge erred in refusing to sustain his exception of no cause of action; that the trial court erred in refusing to permit defendant to introduce any evidence to show that the school board had notice of defendant's ownership of the property prior to the beginning of the work on the school building. For these reasons defendant asks that the judgment be set aside and that the case be remanded. In the alternative, he asks that, in case this court should rule on the merits, then the judgment be amended and increased to the amounts originally claimed.

The exception of prematurity seems to have been abandoned. We find no merit

in defendant's exception of no cause of action. It is grounded on two propositions, the first being that plaintiff did not allege that the land owned by the school board at the time this proceeding was begun was not sufficient for the purposes set forth in the petition, and the second being that it did not allege that defendant's land is the only land suitable for the purpose claimed.

In Paragraph 5 of its petition, the board alleged that, since the Okaloosa School was established, the attendance had constantly increased, that additional buildings had been constructed as required "until at this time, the original three-acre tract of land on which the school is situated has become entirely inadequate, and additional land is necessary to accommodate the buildings and provide a play ground for the students".

In Paragraph 10 of its petition, the school board alleged that "said above described property is the only suitable property available for the purposes herein set forth, and that same is needed by petitioner for public use, public benefit and public works, and same is a public necessity".

The trial judge overruled the exception. His ruling was correct.

 Defendant in answer put at issue the question of the necessity for expropriating his property. In cases of this kind, the determination of the question as to the necessity for expropriation of property is a judicial function. Kansas City, S. & G. R. Co. v. Meyer et al., 166 La. 663, 117 So. 765; City of Shreveport v. Kansas City, S. & G. R. Co. et al., 169 La. 1085, 126 So. 667.

But the defendant did not make a special plea that the trial judge try and determine the issue of the necessity for the expropriation prior to the impaneling of the jury, as was done in the case of Kansas City, S. & G. R. Co. v. Meyer, supra, and the judge did not pass upon that issue in advance of the trial before the jury. Apparently that issue was submitted on the evidence heard during the trial before the jury. All the testimony, both as to the necessity for the expropriation and as to the value of the property, was submitted at the same trial. The fact that the judge rendered and signed a judgment adjudging the property to the school board shows that he found that it was necessary for the school board to acquire the property.

This expropriation proceeding was brought under the articles of the Civil Code which are found under the general heading "Of the Compulsory Transfer of Property". It was carried on under the rules prescribed by the Code.

Article 2626 of the Code provides that, since the first law of society is that the general interest shall be preferred to that of individuals, "every individual who possesses under the protection of the laws, any particular property, is tacitly subjected to the obligation of yielding it to the community, wherever it becomes necessary for the general use".

Article 2627 provides that, "If the owner of a thing necessary for the general use, refuses to yield it, or demands an exorbi-

tant price, he may be divested of the property by the authority of law".

■ The parish school board is a public board, and its authority to acquire, by expropriation proceedings, private property necessary for school purposes is not questioned. It conceded, of course, that it must pay defendant a fair price for the property which it seeks to acquire. It contends, first, that the valuation placed upon the land by the defendant and as fixed by the jury is excessive, and, second, that the defendant is entitled to recover nothing except the value of the land without regard to the improvements.

■ The school board instituted this proceeding after it had appropriated the defendant's land and erected its structures thereon. Article 2629 of the Code provides that the price of the property "ought to be paid to the owner before the expropriation, that is to say, before he has delivered the possession, or it has been finally taken from him, in case of resistance". This does not mean that a public board or a private corporation which has under the law the right to expropriate property may not institute expropriation proceedings after the property has been appropriated.

In Carrollton R. Co. v. Avart et al., 9 La. 205, it was held that the fact that a railroad company had entered upon private property and constructed its roadbed thereon did not preclude the institution by it of a suit afterwards to have the land adjudged to it on assessment and payment of the damage sustained by the owner. See also Gay, Tufor, v. New Orleans Pacific Ry. Co., 32 La.Ann. 277; New Orleans R. & Light Co. v. Lavergne et al., 138 La. 949, 70 So. 921.

The necessity for the school board's acquiring this property was proved beyond question. It is true, as counsel for defendant alleged, that the school board owned 13 acres of land. But this acreage was made up of two tracts, a three-acre tract on one side of a public road and a ten-acre tract on the other side of the road. The three-acre tract was acquired by the school board many years ago on which to erect school buildings. The original building was put on this three-acre tract. From time to time, as it became necessary, other buildings were erected on this tract, and, at the time the school board let the contract for the erection of the new gymnasium and auditorium in 1938, this three-acre tract was not sufficient in size for the structures, although the school board officials seem to have thought it was. They were mistaken, however, as to the exact boundaries of the three-acre tract.

The ten-acre tract, as stated, is across the road from the three-acre tract on which the school buildings are located. It was purchased as a site for homes to be erected for the teachers. The testimony shows that in the interest of the safety of the pupils all the school buildings proper should be on the same side of the public road. The Clark property, which the school board is seeking to acquire, is adjacent to the three-acre tract and on the same side of the road.

The first paragraph of Article 508 of the Revised Civil Code provides that:

"When plantations, constructions and works have been made by a third person, and with such person's own materials, the owner of the soil has a right to keep them or to compel this person to take away or demolish the same."

Defendant invokes this paragraph of that article in support of his claim that he now has a right to keep the buildings erected by the school board on his land, or to compel the board to take away or demolish them.

But that article of the Code has no application to a case of this kind. The reason is that defendant is not now the owner of the soil on which the structures were erected. He has been divested of his property "by the authority of law", Civil Code, Article 2627. He has been compelled to yield it to the community. The consequence or necessary result of the expropriation proceeding was to divest defendant of title to the soil and to vest title thereto in the school board. And it follows necessarily that defendant can neither keep the structures nor compel the school board to take away or demolish them. He is not now the owner of the soil. The school board owns it.

Under Article 506 of the Civil Code, "All the constructions, plantations and works, made on or within the soil, are supposed to be done by the owner, and at his expense, and to belong to him, unless the contrary be proved."

This article of the Code does not say, nor can the language used be construed to mean, that, merely because a person owns the soil on which constructions and works have been made, he owns the constructions and works also. What the article says, and what its language means, is that, because the works are made on the soil, they "are supposed to be done by the owner, and at his expense, and to belong to him", not that they necessarily do belong to him. They are supposed to have been erected by the owner of the soil and to belong to him "unless the contrary be proved", which means that, if it be proved that the owner of the soil did not construct the works at his own expense, he is not the owner of them. The fact that constructions are found on the soil creates the presumption that they belong to the owner of the soil. But that presumption is overthrown if it is proved that they were made by another.

When a third person makes improvements on the soil of another, the person making them is the owner of them. But, under the first paragraph of Article 508, the owner of the soil has a right to acquire ownership of them on certain conditions. "The owner of the soil has a right to keep them", says the Code. He does not own them merely because they were built on his soil.

In the case at bar, the school board erected, at its own expense, constructions on defendant's land. It owned the works at the time the expropriation proceeding was instituted, and it acquired the soil on which the works were constructed as a result of the expropriation; so that now the school board owns the soil and the works.

If defendant's theory that he became the owner of the buildings merely

because they were erected on his soil, were correct, then, of course, the school board would owe him, not only the value of the soil, but the value of the works also. But defendant's contention finds no support in the law. He did not erect the buildings at his expense, and, since they were erected by the school board, he could not acquire ownership of them without complying with the third paragraph, Article 508 of the Code.

The situation would be entirely different if the school board had been denied the right to acquire the property by expropriation. In that event, defendant would still be the owner of the soil and could elect either to keep the buildings or to compel the school board to take them away. But, now that he has been divested of title to the soil, he can make no election.

■ Defendant alleged in his answer, and his counsel now argues, that the school board acted in bad faith. But, as said by this court in the case of New Orleans Ry. & Light Co. v. Lavergne, 138 La. 949, 70 So. 921, 924:

"The question of good or bad faith, however, is a matter of no importance in this case, because the question of compensation for the improvements made by the railway company would have arisen only in the event the jury had decided that the land should not be expropriated and that the plaintiff should be evicted. In that event, if the improvements were made in good faith on the part of the railway company, the latter would have been entitled to compensation for them; and, if they were made in bad faith, the defendants would have had the option of paying for and retaining them or permitting the plaintiff to remove them."

In that case the railway and light company appropriated defendant's land by building upon it and subsequently instituted expropriation proceedings and by that proceeding was permitted to acquire the soil. In that particular, that case is like the one at bar.

In the case of Gay, Tutor, v. New Orleans Pacific Ry. Co., 32 La.Ann. 277, the plaintiff, alleging that the defendant corporation had, without his consent or the institution of expropriation proceedings, entered upon his land and was erecting works thereon, which damaged his crop, prayed for judgment for the amount of the damage and that the defendant be enjoined from proceeding further with the works. Subsequently and before the case was put at issue, the defendant instituted proceedings for expropriating the property, which resulted in a judgment of expropriation, decreeing the company to be the owner of the land claimed by it on paying the price fixed by a jury of freeholders. The court said:

"The effect of the judgment of expropriation was to make the corporation the owners of the land claimed upon their paying the amount fixed."

In that case, as in the case of New Orleans Ry. & Light Co. v. Lavergne, supra, and in the case at bar, the expropriation proceeding was begun after the property had been appropriated, and in those cases

proceedings were carried on just as though no appropriation of the property had been made.

If we concur in defendant's theory that the provisions of Article 508 of the Code apply to this case, he would not be entitled to a judgment decreeing him to be the owner of the works, or a one-half interest therein, because he has not complied, nor does he now offer to comply, with its provisions. The third paragraph of that article provides:

"If the owner keeps the works, he owes to the owner of the materials nothing but the reimbursement of their value and of the price of workmanship, without any regard to the greater or less value which the soil may have acquired thereby."

 Under no theory could defendant keep the works without reimbursing the school board the value of the materials used and the price of workmanship. Even if the board had erected them in bad faith, he could not retain them without making these payments. New Orleans Ry. & Light Co. v. Lavergne, supra.

In Johnson v. Weinstock, 31 La.Ann. 698, this court said:

"If the person who makes the constructions knows he has no right to do so, in other words, *is in bad faith,* then the owner of the soil is not owner of the constructions, unless he elects to take them. He may require their demolition or removal. But if he elect to keep them, they *become his,* and he owes the constructor the costs of material and the price of workmanship."

Kibbe v. Campbell, 34 La.Ann. 1163, is to the same effect. As we have said, defendant cannot now order the works taken away because he does not own the soil.

 The jury fixed the value of the land taken at $1,200, which is slightly in excess of $200 per acre. We cannot approve the jury's finding. The testimony does not support it. The valuation is manifestly excessive.

 In a proceeding of this kind, a jury of freeholders have to some extent the character and authority of experts. They are supposed to have some personal knowledge of land values and are authorized to rely, at least in part, upon their own opinions, and their verdict as to the value of the real estate sought to be expropriated is entitled to respect and has weight. But the jurors are not at liberty to disregard the testimony. In the case of City of Shreveport v. Herndon, 173 La. 144, 136 So. 297, 299, we reviewed the jurisprudence relating to the duties of juries in determining real estate values, and said that they may, "in part at least" exercise their independent judgment. We went further and said:

"But they are not authorized to fix the value solely according to their own private opinion, even when they themselves inspect the property. On the contrary, it is their sworn duty to consider and give weight to all the testimony, if not discredited."

 In that case and in several more recent cases, we said that an appellate court should not amend an award made by a

jury of freeholders unless it was obviously inadequate or excessive. Housing Authority v. Polmer et al., 195 La.. 608, 197 So. 247, and cases there cited.

▆▆▆ The jury should have allowed defendant the market value of the land at the time this expropriation suit was filed without regard to the improvements put upon it by the school board. Civil Code, Article 2633; New Orleans Ry. & Light Co. v. Lavergne, supra.

Mr. Clark, the defendant, said he valued his land at $200 per acre. That was an arbitrary figure fixed by him. He gave no reasons for valuing the property at that figure. He was asked by his counsel what he considered was the value of the land without any of the improvements, and he said, "Well, with the improvements and all, I claim Twelve Thousand and Five Hundred for the auditorium and also five hundred for the septic tank and the sewer lines and One Hundred Dollars for the garage." That was not an answer to the question. He was repeatedly asked on cross-examination whether he had ever heard of any property in that vicinity selling for as much as $200 per acre. He evaded all such questions but referred to sales made elsewhere and especially of lots located near the West Monroe High School and the Junior College, which are in the City of Monroe. These schools are about 15 miles from this property. He referred also to the sale of a lot for $125, which lot is about one mile from the Okaloosa School. But it developed that this lot is located at the intersection of two public highways and was wanted by the purchaser for a filling sta-

tion. Mr. Clark did not say what commercial value his property had. He said he had had two or three offers to purchase one acre of this particular plot but that the prospective purchaser, did not state how much he would give and that he had fixed no price.

The only witness called by defendant was Lee Roberts, who lives two and a half miles from the Okaloosa School. He was asked his opinion as to the value of the six acres of ground, and he said he did not know. Such is the character of testimony offered by defendant to support his theory that the land was worth $200 per acre.

The testimony shows that the Okaloosa School is located in a rural section of the parish west of the Ouachita River, and, according to statements made by counsel, is about 15 miles from the City of Monroe. There were no improvements of any character on the Clark land at the time the school board erected its buildings. It is what all the witnesses referred to as cutover hill land, susceptible of cultivation. The land was not then in cultivation, and there is no testimony at all in the record to show that there was any demand for it.

The school board called as experts Mr. R. B. Blanks of Monroe, engaged in the business of handling real estate and as a broker; Mr. R. Downes, Jr., of Monroe, engaged in the insurance and real estate business, and Mr. E. W. Crews, engaged in the sale of real estate, stocks, and bonds.

Each testified that he had recently inspected the property. Mr. Blanks said that in his opinion, because of its proximity to

the school, it was worth $20 per acre; otherwise it would not be worth more than $10 per acre. Mr. Downes stated that the property was worth $15 per acre. Mr. Crews stated that in his opinion it was worth $25 per acre.

The school board offered and filed in evidence a number of deeds showing that in 1938 and 1939 land in 40-, 80-, and 100-acre tracts in that vicinity was selling at from $5 to $12.50 per acre. But it was shown that this six-acre tract was a better grade of land than the average of the tracts sold, so these deeds have but little weight.

The highest value placed upon the land by any of the witnesses, except Mr. Clark, was $25 an acre, and Mr. Clark assigned no reason for his valuation. But, in view of the fact that the members of the jury are freeholders and are supposed to have some personal knowledge of land values, and that their opinions should be given some weight, we fix the award at $300, which is approximately $50 an acre.

For the reasons assigned, the verdict and judgment appealed from are amended by reducing the amount of the award from $1,200 to $300, and, as thus amended, the verdict and judgment are affirmed, defendant to pay the costs.

O'NIELL, C. J., and LAND, J., do not take part.

### On Rehearing.

ODOM, Justice.

On original hearing, we rendered judgment condemning defendant to pay all costs incurred in the case. Defendant applied for a rehearing, and one of the points stressed in his application was that it would be inequitable, under all the circumstances, to condemn him for all the costs because the amount of the costs exceeded the amount awarded him as the value of the land taken. We granted a rehearing, but restricted its scope to a further consideration of the question whether defendant should pay all costs or whether the parish school board should pay all or any part of the costs.

After the application for rehearing was granted, the parish school board, through its counsel, and the defendant, through his counsel, filed a joint stipulation in which it is recited that the Ouachita Parish School Board "now petitions this Honorable Court to cast it for all costs in these proceedings as it feels both morally and legally indebted for said costs, and both Appearers also show that the interest of all parties to this litigation will be better served by said judgment becoming final, and your Appellant placed in possession of the property and the Appellee paid therefor as early as possible and without further delay".

Both appellant and appellee "join in praying that said judgment be amended so as to cast Plaintiff and Appellant for all costs and awarding the compensation heretofore granted to the Appellee, and that said judgment be made final immediately upon the filing of this Motion".

In accordance with the stipulations and requests set forth by both parties in the document from which we have quoted above, it is now ordered that our original

decree, in so far as it relates to the payment of costs, be recast so as to read as follows: It is ordered that the Ouachita Parish School Board, appellant, pay all costs of this proceeding incurred in the district court as well as the costs of appeal.

O'NIELL, C. J., and LAND, J., do not take part.