CULPEPPER, Judge.
Plaintiff filed this suit under LSA-C.C.P. Article 3663(2) to enjoin the defendant from interfering with plaintiff’s possession of a servitude for a lateral irrigation canal. The district judge granted a temporary restraining order and, after hearing, a preliminary injunction. Defendant appealed. Plaintiff answered the appeal, seeking a permanent injunction.
The substantial issue is whether plaintiff has proved it possessed the servitude for more than a year previous to defendant’s disturbance of that possession on or about March 20, 1970.
For the purpose of clarity, we have appended a copy of a plat which is essentially the same as Exhibit P-2 filed in evidence. The lateral canal in question starts at point A on plaintiff’s main canal and is shown by the heavy dark line running in a westerly and then a southwesternly direction to point B.
The evidence shows clearly that the entire canal, from A to B, was used and possessed by the plaintiff irrigation company to furnish water to rice farmers for many years preceding 1967, with the possible exception of the portion from Y to B, which Mr. Calvin Sensat testified was not built until about 1965. This use of the canal by plaintiff consisted of maintenance of the levees, outlets, etc., and , running water through the canal during the rice irrigation season, which normally extends from some time in March through July each year.
In 1962, the defendant, James Wallace Pousson, dug his own well at point G on his property in Section 19, as shown on the attached plat. He also constructed his own irrigation canal, as shown by the line on the plat leading from G to A and thence along the north side of plaintiff’s canal to point M, where it turns south and crosses the road to the property of Bernard Regan and thence runs in a westerly and southerly direction on to point Z, located on defendant’s property in Section 21. Defendant used his own well and his own canal from 1962 until 1967 to flood his rice in Sections 19 and 21.
In 1967, plaintiff did not use its canal, since it had no contracts to furnish water. It was in that year that defendant first used a portion of plaintiff’s canal. The circumstances under which this use by defendant started were that Mr. Bernard Regan had planted soybeans on his property, and water from defendant’s canal escaped and flooded some of the beans. Since plaintiff was not using its canal, defendant switched over and used it from N to Y.
In 1968, Bernard Regan planted rice on his property and he contracted with the plaintiff for water. This water was furnished by plaintiff from its main canal at point A and thence along the lateral canal in dispute to point N, which, according to the testimony, is about 75 feet from Regan’s property line. At point N plaintiff’s canal was blocked and the water went into Re-gan’s field. In that year plaintiff did not use its canal below point N. Defendant testified that in 1968 he again used that portion of plaintiff’s canal from N to Y to flood his rice in Section 21.
In 1969, plaintiff used its canal from A to B and there is no evidence of any use by defendant or any other person. In that year plaintiff had contracts to furnish water to Bernard Regan, to Casper Trumps, whose property is shown along the south end of the canal in question, and to Theresa Bartlett’s property at the south end of the canal and which was farmed that year by Lloyd La Combe.
The exact date on which plaintiff commenced using its canal in 1969 is not clear from the evidence. Neither plaintiff’s gen *153 eral manager, Mr. Barton Freeland, nor its canal manager, Curley Regan, could give the exact dates in 1969 when they prepared the canal for use and first started running water through it. Calvin Sensat testified that he planted the rice for Casper Trumps on May 26, 1969, and that normally the rice would have been flooded two weeks after planting, which would have been about June 10, 1969. We have carefully reviewed the evidence but are simply unable to determine the dates in 1969 when plaintiff first started using its canal. In his brief filed in this court defendant correctly states that, giving plaintiff every benefit of the doubt, it first began pumping water through the canal for the 1969 season on May 12, 1969.
The disturbance of possession at issue occurred on or about March 20, 1970. At that time, the defendant cut the levee of plaintiff’s canal on the Bernard Regan tract and began pumping water from defendant’s well into plaintiff’s canal. Defendant used the canal to irrigate his own property in Section 21 and the Casper Trumps property in Section 22, which was being farmed that year by Calvin Sensat. On May 22, 1970, plaintiff filed a previous suit to enjoin defendant from using that portion of its canal on the Bernard Regan tract. After that suit was filed, defendant stopped using the portion of plaintiff’s canal on the Regan property. However, defendant continued to use the remainder of the canal and the present suit was filed on June 4, 1970, to enjoin defendant from using any portion of the canal in question, shown on the attached plat from A to B. A temporary restraining order was issued on the date the suit was filed and pursuant to that order defendant terminated his use of the canal. A preliminary injunction was issued on October 23, 1970.
The injunction was granted under LSA-C.C.P. Article 3663 which reads as follows :
“Sequestration of immovable property or of a real right involved in a possessory or petitory action during the pendency thereof is available under the applicable provisions of Chapter 1 of Title I of Book VII.
“Injunctive relief, under the applicable provisions of Chapter 2 of Title I of Book VII, to protect or restore possession of immovable property or of a real right, is available to:
“(1) A plaintiff in a possessory action, during the pendency thereof; and
“(2) A person who is disturbed in the possession which he and his ancestors in title have had for more than a year of immovable property or of a real right of which he claims the ownership, the possession, or the enjoyment.”
The Official Revision Comment under Article 3663 states:
“(a) This article makes no change in the law.
“(b) Injunctive relief is made available in two separate and distinct types of cases: (1) as an ancillary remedy in a possessory action; and (2) as the relief to be granted in an injunction suit brought to enjoin trespassers and other disturbers, and which is neither a posses-sory nor a petitory action. See Churchill Farms v. Gaudet, 184 La. 984, 168 So. 123 (1936).”
The possession referred to in Article 3663 is described in LSA-C.C.P. Article 3660 as follows:
“A person is in possession of immovable property or of a real right, within the intendment of the articles of this Chapter, when he has the corporeal possession thereof, or civil possession thereof preceded by corporeal possession by him or his ancestors in title, and possesses for himself, whether in good or bad faith, or even as a usurper.”
LSA-C.C. Articles 3426-3431 set forth general principles of corporeal and civil possession and then Article 3432 states :
“Possession applies properly only to corporeal things, movable or immovable.
*154 “The possession of incorporeal rights, such as servitudes and other rights of that nature, is only a quasi possession, and is exercised by the species of possession of which these rights are susceptible.”
Article 3432 of the Louisiana Civil Code of 1870 differentiated between “possession” of corporeal things and “quasi possession” of incorporeals. This is solely for the purpose of accurate analysis, and in order to indicate that incorporeal things are susceptible of possession in a metaphorical sense. Following traditional civilian precepts, the Code thus removes any doubts as to the possession of incorporeals and declares that this possession “is exercised by the species of possession of which these rights are susceptible.” For the rest, the rules of substance and procedure applicable to quasi possession are the same as those applicable to possession properly so-called. In other words, the Code merely notes the analytical difference; it does not establish special rules applicable to quasi possession. See Yiannopoulos, Civil Law Property, Secs. 13, 92, 138 (1966); Planiol, Civil Law Treatise, Vol. 1, No. 2954, et seq.; Civil Law Translations, Aubry & Rau—Property, Vol. 2, Sec. 129 at pages 89-92. It follows, therefore, that the real actions of the Code of Civil Procedure are designed to protect both possession and quasi-possession.
Predial servitudes are real rights and are susceptible of quasi possession. See Yiannopoulos, Predial Servitudes: General Principles, 29 La.L.Rev. 1, 38 (1968). This quasi possession may be protected in Louisiana by the possessory action and by injunction. La.Code of Civil Procedure Arts. 3655, 3663 (1960). These articles, however, afford protection only if a person and his ancestor in title have had possession for more than a year. If a servitude is continuous, the requirement of possession for more than a year is easily satisfied; but if the servitude is discontinuous, a question arises whether any person may be held to be in possession for more than a year. In Louisiana, courts have obviated this difficulty by a simple expedient: continuous servitudes are protected by application of the rules of the Code of Civil Procedure and discontinuous servi-tudes by application of Articles 777, 864 and 865 of the Civil Code. The matter is discussed in Yiannopoulos, supra.
According to Article 727 of the Louisiana Civil Code of 1870, the servitude of acque-duct is an example of a continuous and apparent servitude. Under Louisiana jurisprudence, the servitude of acqueduct is always continuous either on the ground that the example given in Article 727 is determinative of the status of the servitude or on the ground that the criterion of act of man applies only to operations on the servient estate. Thus, “though acts of man may regulate the flow of water through the ditch or canal, the servitude is ‘continual without the act of man’ in the sense that it may be used uninterruptedly without the act of man.” Wild v. LeBlanc, 191 So.2d 146, 148 (La.App. 3rd Cir. 1966). See also Acadia-Vermillion Rice Irrigating Co. v. Broussard, 175 So.2d 856 (La.App. 3rd Cir. 1965). For extensive discussion of these cases and of the classification of servitudes, see Yiannopoulos, Predial Servitudes: General Principles, 29 La.L.Rev. 1, 31-11 (1968).
Since the servitude in question is continuous and apparent, there should be no doubt that possessory protection and in-junctive relief are available to one who has been in the quasi possession of the servitude for more than a year. Plaintiff clearly possessed the servitude until 1967; thus, a question arises whether plaintiff has lost its possession as a result of the acts of the defendant. According to Article 3449 of the Louisiana Civil Code of 1870, possession, and in this case quasi possession, is lost when the possessor is evicted and the usurper is allowed to remain without inter *155 ference for one year, vides: Article 3449 pro-
“A possessor of an estate loses the possession against his consent:
“1. When another expels him from it, whether, by force in driving him away, or by usurping possession during his absence, and preventing him from re-entering.
“2. When the possessor of an estate allows it to he usurped and held for a year, without, during that time, having done any act of possession, or interfered with the usurper’s possession.”
We conclude plaintiff lost possession of that portion of the servitude from N to Y when it allowed defendant to usurp that portion and use it during the entire rice irrigation seasons for 1967 and 1968. Of course, an argument could be made that defendant only possessed the servitude during the irrigation seasons, March through July, and hence plaintiff has not lost its possession by usurpation that lasted for more than a year. However, this is the species of possession of which an irrigation canal is susceptible. This is the way plaintiff possessed the canal until 1967. It would be inconsistent to hold that plaintiff possessed the canal by such use but defendant did not. Particularly where the facts are that defendant used the canal for two successive irrigation seasons.
This possession acquired by defendant continued until plaintiff again commenced the use of the servitude on May 12, 1969. However, this means that at the time of defendant’s disturbance on March 20, 1970, plaintiff had not been in possession of that portion of the servitude from N to Y for over a year. Hence, plaintiff is not entitled to an injunction covering the entire servitude from A to B.
Although we have heretofore referred to “the servitude”, it is apparent from the attached plat that the canal crosses several tracts of land and a separate servitude exists on each. Of course, possession of one servitude does not constitute possession of another. Each must be considered separately. It appears that plaintiff may have possessed one or more servitudes for over a year. However, the record before us does not sufficiently establish the limits of the servitudes involved to permit an injunction as to portions of the canal. For that reason, we reject plaintiff’s entire demand for an injunction, reserving to it the right to seek in other proceedings an injunction as to those portions of the canal, outside the portion from N to Y, which it may contend it possessed for over a year preceding the disturbance.
Having reached this conclusion, we reject plaintiff’s request, via answer to the appeal, for a permanent injunction.
Defendant seeks damages and attorney’s fees under LSA-C.C.P. Article 3608 for the wrongful issuance of the temporary restraining order and the preliminary injunction. Having found both were wrongfully issued, we will remand this case to the district court for a determination of the damages and attorney’s fees.
For the reasons assigned, the judgment appealed is reversed and set aside. Judgment is now rendered in favor of the defendant dissolving the temporary restraining order and the preliminary injunction previously entered herein. This case is remanded to the district court for a determination of the damages and attorney’s fees to which defendant is entitled under LSA-C.C.P. Article 3608. All costs in the district court and on appeal are assessed against the plaintiff.
Reversed and remanded.
*156 APPENDIX