265 So.2d 756

**LOUISIANA IRRIGATION AND MILL COMPANY**

v.

**James Wallace POUSSON.**

**No. 51849.**

June 29, 1972.

Dissenting Opinion Sept. 7, 1972.

Rehearing Denied July 31, 1972.

Pugh, Buatt, Landry & Pugh, Lawrence G. Pugh, Jr., Crowley, for plaintiff-applicant.

Frank Hays Gladney, Iota, for defendant-respondent.

DIXON, Justice.

Petitioner, Louisiana Irrigation and Mill Company, sought an injunction prohibiting defendant, James W. Pousson, from interfering with a described "lateral aqueduct servitude." The described servitude was a canal about thirty feet wide utilized to conduct water from a main irrigation canal known as the "Abbott-Duson Canal." The Abbott-Duson Canal, in turn, carried water about fourteen miles from Bayou Des Cannes. The lateral canal involved in this litigation crossed the lands of several owners including lands owned by the defendant. There is no allegation that plaintiff possessed the canal under color of title. Plaintiff alleges that the defendant dug his own irrigation well and began pumping water into plaintiff's canal, and by using the canal for irrigation purposes, disturbed the plaintiff's rights of possession.

In responsive pleadings, the defendant claimed to be the owner and the possessor

of all canals involved in this litigation, particularly for more than one year prior to the institution of plaintiff's suit and for more than one year prior to the disturbance alleged by plaintiff.

The trial court overruled exceptions and denied the motion to dissolve, and, after trial on the rule for preliminary injunction, rendered judgment enjoining the defendant from interfering with plaintiff's use of the irrigation canal. The Court of Appeal reversed, deciding that plaintiff lacked the requisite possession to support injunctive relief under C.C.P. art. 3663. 252 So.2d 151.

The Court of Appeal agreed with plaintiff's classification of the servitude involved as a continuous and apparent servitude, because of the provisions of C.C. art. 727,[1] and as a real right subject to "quasi possession."[2] The court further concluded that the "quasi possession" of the servitude claimed by the plaintiff had not been continuous for the year prior to March 20, 1970, the date found to be the beginning of the disturbance of the possession by defendant. Its ruling was confined to a portion only of the canal (252 So.2d 151, 155) as it crossed the lands of the defendant, since the plaintiff might have been in possession of other portions of the canal which crossed lands owned by other persons.

■ We agree with the conclusion of the Court of Appeal: before plaintiff can obtain an injunction under C.C.P. art. 3663(2)[3] it must have been in possession of the immovable[4] or real right for a year before the disturbance.

From the evidence the Court of Appeal found that the lateral canal involved was used by the plaintiff to furnish water to rice farmers for the purpose of irrigating rice crops for many years prior to 1967 (with the exception of the lower end of

---

1. Continuous servitudes are those whose use is or may be continual without the act of man.

 "Such are aqueducts, drain, view and the like.

 "Discontinuous servitudes are such as need the act of man to be exercised.

 "Such are the rights of passage, of drawing water, pasture and the like."

2. C.C. art. 3432. "Possession applies properly only to corporeal things, movable or immovable.

 "The possession of incorporeal rights, such as servitudes and other rights of that nature, is only a quasi possession, and is exercised by the species of posses-

sion of which these rights are susceptible."

3. " . . . Injunctive relief, . . . to protect or restore possession of immovable property or of a real right, is available to:

 "(2) A person who is disturbed in the possession which he and his ancestors in title have had for more than a year of immovable property or of a real right of which he claims the ownership, the possession, or the enjoyment."

4. According to C.C. art. 471, a servitude on an immovable estate is an immovable. There is probably no real conflict with C.C. art. 3432, quoted at Note 2.

the canal, which was not constructed until 1965). Plaintiff maintained the levees and outlets, and ran water through the canal during the rice irrigation season, which normally begins in March and might extend through July in each year.

In 1962 the defendant, through whose land portions of the canal pass, dug his own well and constructed his own irrigation canal, paralleling a portion of plaintiff's canal. From 1962 until 1967 defendant irrigated his rice from his own well and from the canal which he constructed.

Plaintiff corporation is in the business of irrigating lands planted to rice, and furnishes water to farmers in return for a share of the rice crop. The canal involved in this suit was not used in 1967, since plaintiff had no contracts to furnish water to farmers adjacent to that canal in that year. Rice fields are rotated. Some of the fields for which plaintiff would have furnished water were planted to soybeans. In 1967, while defendant irrigated his own fields from his own well, some of the water from the canal which the defendant had constructed escaped and wet the bean crop of one of the owners of land through which the canal passed. Thereupon, defendant switched from his canal to plaintiff's unused canal, the one involved in this suit.

In 1968 plaintiff used a short portion of the canal here involved. In that year, the defendant again used a major portion of plaintiff's canal to carry his own water to irrigate his own rice crop.

In 1969 plaintiff used the entire canal, and its use was exclusive. Plaintiff first began pumping water through the canal for the 1969 season on May 12, 1969. This factual conclusion by the Court of Appeal gave plaintiff "every benefit of the doubt." [5]

 The 1967 and 1968 usurpation of the lateral canal by defendant clearly resulted in a loss of possession by plaintiff. Possession is lost "when the possessor of an estate allows it to be usurped and held for a year, without, during that time, having done any act of possession, or interfered with the usurper's possession." C.C. art. 3449. Plaintiff's possession again commenced on May 12, 1969, continuing through the 1969 season. On March 20, 1970 defendant again occupied the lateral canal, pumping water from his own well into the canal to irrigate his own crops and that of others.

 Plaintiff contends that the Court of Appeal erred in finding that the plaintiff did not have possession of the canal

5. Even interpreting the evidence as showing that the plaintiff cleaned the canal and made minor repairs before the irrigating season would not avail the plaintiff. The enjoyment of an accessory right is not user of a servitude. C.C. art. 799.

for one year preceding the disturbance by the defendant on March 20, 1970.

The arguments of the plaintiff are without substance. We find the evidence adequately supports the Court of Appeal in its factual findings, both as to the nature and extent of plaintiff's possession, and the open adverse possession of the defendant.

■ In addition, plaintiff contends that the Court of Appeal should have maintained its "plea of estoppel." In effect, plaintiff argues that, since the defendant never objected to plaintiff's use of the canal, and constructed his own canal system, and once asked plaintiff's canal manager to allow defendant to use plaintiff's canal, defendant should be estopped from contesting plaintiff's possession or ownership.

There is no substance to the argument. Even if "estoppel" were available in an action concerning possession of an immovable, there is no showing that defendant's actions, with respect to plaintiff's use of the canal, ever amounted to any more than sufferance. Defendant considered the benefit accruing to his neighbors, who did not have their own irrigation system and who depended on plaintiff for water. The plaintiff never relied to its detriment on any act of the defendant, an essential element to any theory of "estoppel."

For the purposes of this decision, we have adopted, as did the Court of Appeal, plaintiff's position that this irrigation canal constituted a continuous and apparent servitude. This is the legal position most favorable to the plaintiff. Many significant issues are suggested, but not decided. Some are of such importance that they should not be "decided" in dicta nor on an inadequate record. This opinion does not, for example decide that a rice irrigation lateral canal is an aqueduct or other continuous, apparent servitude, or even a predial servitude of any kind, as between plaintiff and defendant. An explanation of the limitations of this opinion is attached as an appendix.

For these reasons, the judgment of the Court of Appeal dissolving the temporary restraining order and the preliminary injunction previously entered, and remanding the case to the district court for determination of damages and attorney's fees is affirmed, at plaintiff's cost.

BARHAM, J., dissents and assigns reasons.

### APPENDIX

The determination of the nature of the right involved in the case before us is not necessarily as simple as maintained by the plaintiff.

Servitudes which affect the free use of property are to be interpreted in favor of the owner of the property affected. C.C. art. 753. The owner of the soil is presumed to be the owner of constructions

made on the soil. C.C. arts. 504, 506; Ouachita Parish School Board v. Clark, 197 La. 131, 1 So.2d 54; Louisiana Land & Pecan Company v. Gulf Lumber Company, 134 La. 784, 64 So. 713. To combat this presumption, we might find it relevant to determine whether the canal was constructed by the landowner or by the irrigation company, an area in which the evidence before us is both sparse and conflicting.

Although the Civil Code refers to aqueducts,[1] and defines the servitude of aqueduct as a continuous apparent servitude, it is not necessary to the decision rendered here to decide whether this rice irrigation lateral canal is an aqueduct.

The subject of this litigation, as between plaintiff and defendant, is perhaps not even a predial servitude, because the plaintiff's rights in the matter will accrue to it in the form of money or shares of rice crops. The plaintiff is not the owner of an estate benefited by the "servitude" of allowing an irrigation canal to run through the estate of another.[2] The irrigation canal is apparent, like a paved or graveled highway or road is apparent. However, unlike ancient aqueducts, which conducted

---

1. "The conducting of water or aqueduct is the right by which one conducts water from his estate through the land of his neighbor by means of an aqueduct or ditch." Art. 724, C.C. (Note the apparent mistranslation in Article 724 of the French word "dans." We do not necessarily accept the "correct" translation noted in Louisiana Legal Archives Compiled Edition of the Civil Code and in certain annotated editions of the Civil Code).

"Servitudes are either continuous or discontinuous.

"Continuous servitudes are those whose use is or may be continual without the act of man.

"Such are *aqueducts*, drain, view and the like.

"Discontinuous servitudes are such as need the act of man to be exercised.

"Such are the rights of passage, *of drawing water*, pasture and the like." Art. 727, C.C. (Emphasis added).

"Again, servitudes are either visible and apparent or nonapparent.

"Apparent servitudes are such as are to be perceivable by exterior works; such as a door, a window, an aqueduct.

" . . . " Art. 728, C.C.

2. "All servitudes which affect lands may be divided into two kinds, personal and real.

"Personal servitudes are those attached to the person for whose benefit they are established, and terminate with his life. This kind of servitude is of three sorts: usufruct, use and habitation.

"Real servitudes, which are also called predial or landed servitudes, are those which the owner of an estate enjoys on a neighboring estate for the benefit of his own estate.

"They are called predial or landed servitudes, because, being established for the benefit of an estate, they are rather due to the estate than to the owner personally.

"This kind of servitude forms the subject of the present title." Art. 646, C.C.

"A real or predial servitude is a charge laid on an estate for the use and utility of another estate belonging to another owner." Art. 647, C.C.

"From the definition contained in the preceding article, it follows that to establish a predial or real servitude there must first be two different estates, one of which owes the servitude to the other.

"If then a stipulation be made of a servitude in favor of a person, and not in favor of an estate, the obligation will not be null

water by gravity from a natural source to a distant user, the use of the lateral irrigation canals requires the activity of man (like the right of passage, or of "drawing water") to elevate by pumps water from a nearby source to be placed in the lateral canal to flow by the force of gravity to the lands of ultimate users. We do not, therefore, decide that the servitudes involving irrigation canals, as between the water pumper and the landowner, are continuous predial servitudes. Granting that the canal here is apparent, because of its perceivable exterior works, it is possible that the servitude is not subject to possession, and there-

fore not protected by the injunction provisions of C.C.P. art. 3663(2). In Ogborn v. Lower Terrebonne Refining & Manufacturing Company, 129 La. 379, 56 So. 323, this court approved the French doctrine that the exercise of a discontinuous servitude "does not survive the act of man; it ceases the moment this act ceases." Since discontinuous servitudes are not susceptible of possession, according to French doctrine, they are not protected in France by possessory actions. Yiannopoulos, Predial Servitudes, 29 La.L.R. 1, 38.[3]

It is because of these questions, posed principally by the defendant, but not essen-

on that account, but it will not create a real servitude." Art. 648, CC.

"It is necessary, in the third place, that the servitude have for its object the use or benefit of the estate in favor of which it is established." Art. 650, C.C., first paragraph.

See also Art. 757, C.C.

3. As noted in the article cited, the court in Ogborn v. Lower Terrebonne, etc., did not consider the effect of C.C. art. 3432, which has no counterpart in the French law.

The rice irrigation canal in Wild v. LeBlanc, La.App., 191 So.2d 146, was found to be continuous and usable, without the act of man, unlike the lateral canal in the instant case. In the Wild case, the ditch involved was found to drain rice irrigation waters and other waters from the rice field, and although the flow of water was regulated by act of man, it was subject to continuous use without the act of man. The operation of the ditch in the Wild case and the canal before us. appears to be substantially different. The rice irrigation canal involved in Acadia-Vermilion Rice Irrigating Com-

pany v. Broussard, La.App., 175 So.2d 856, was much like the irrigation canal involved in the instant suit. There, the Court of Appeal found that the exercise of the rice irrigation canal servitude survived the act of man required to pump the water into the canal. Since, as the court found water continued to flow into the lateral canal on the defendant's property when there was water in the main canal and when the date from the main to the lateral was open, the servitude of aqueduct for irrigation purposes continued, even after the plaintiff ceased to occupy or to be on the servient estate. See Note, 40 Tul.L.R. 397. See also Acadia-Vermilion Rice Irrigating Company v. Broussard, 185 So.2d 908, for discussion of issues. The case went to the Court of Appeal the first time after the district court had sustained an exception of no cause of action. The case went to the Court of Appeal the second time after the district court had granted a motion for summary judgment. The district court was reversed both times.

For a scholarly discussion of Louisiana and comparative law concerning the servitude of aqueduct, see 29 La.L.R. 1, 33–36.

tial to our decision, that we qualify our opinion.

BARHAM, Justice (dissenting).

We are here concerned with the question of whether the plaintiff can maintain a possessory action with the ancillary right to injunctive relief under Code of Civil Procedure Article 3663. We are unable to determine from the record before us the *nature* of the disputed right to the irrigation canal. We are dealing with an unusual real right not specifically defined by law. If it were a pure servitude, we would very likely be required to determine in a petitory action that the *ownership* of it could be established only by title and could not be acquired by prescription. See La. Civ.Code Arts. 765, 766. But it is unnecessary to determine the *ownership* of the right in this possessory action. While it is clear that *plaintiff* and its ancestors in title have *possessed* the right for more than 50 years under the belief that *they were the owners*, I find nothing in the record which would lead me to believe that the *defendant* ever exercised any acts of possession or quasi-possession with the belief and intent of *owning* the immovable right until one month before suit was filed. The record does indicate that some of the land upon which the canal lies is owned by defendant, but much of the land which the canal crosses is owned by others. The record establishes simply that the defend-

ant during the rice seasons of 1967 and 1968, by sufferance, used parts of the canal in question to irrigate his rice crop.

The majority here and the Court of Appeal below have both cited Civil Code Article 3432 as the basis for determining the nature of the required possession of incorporeal immovable rights. That article says:

"Possession applies properly only to corporeal things, movable or immovable.

"The possession of incorporeal rights, such as servitudes and *other rights of that nature,* is only a *quasi possession, and is exercised by the species of possession of which these rights are susceptible.*" (Emphasis mine.)

The record is replete with evidence that portions of rice canals are not used for the flow of water during periods of two or three years while the ground, once planted in rice and flooded by the canals, lies fallow so that the soil content may be repleted. This has been the custom of rice farmers and irrigation canal operators for many, many years. It is only when the rice crop is rotated back to the plots which have been left unused that the canals are needed again, by the companies for supplying water and by the farmers for flooding their rice fields. Nevertheless the canals are maintained to some extent between the periods of flowage use.

The fact that the plaintiff did not use portions of this irrigation canal for water flowage in 1967 and 1968 is of no moment since in those years there were no lands needing water from this canal to flood their rice crop. When the plaintiff company used all the disputed portion of the canal during the entire rice season of 1969, it continued the species of quasi-possession of this incorporeal right by which it had maintained its possession for over 50 years. This use constituted the exercise of that species of possession of which the right was susceptible. Here the right is simply the use of a large ditch which carries water three or four months of some years, does not carry water in the remaining months, and in other years never carries water. I therefore conclude from the facts established and from the express language of the Code that plaintiff has maintained continuous possession for over 50 years, including the one year immediately preceding this suit as required by Article 3449(2) of the Civil Code.

There is no merit in defendant's claim that he possessed for one year before suit. Possession in law implies a right to enjoy linked to the right of ownership. La.Civ. Code Art. 3434. Although one may possess without being the true owner (Art. 3435), he *may not acquire possession* unless he has the "intention of *possessing as owner*" (Art. 3436(1)). "This intention of retaining possession is always supposed, where a contrary intention does not appear decidedly * * *." La.Civ.Code Art. 3443; see also Art. 3492. One who possesses without color of title or in bad faith must possess as "master", as owner, in order to disturb the previous possessor or to establish legal possession in himself. La.Civ.Code Art. 3452. For a possessor in bad faith to use civil possession for a continuation of his corporeal possession there must be vestiges of works erected by him. La.Civ.Code Art. 3502. There is no proof that such was the case here, and defendant cannot claim that any civil possession by him continued his two or three months' activity carried on in 1967 and 1968.

When the law on possession and the possessory action is considered, the natural legal conclusion must be, from the facts in this record, that for the year preceding this suit *the plaintiff* possessed in the capacity of master and owner and is therefore entitled to maintain the possessory action. Plaintiff possessed in the only manner by which the right of possession could be exercised and to the extent necessary to preserve possession of that particular right. The corporeal acts of the defendant from March to July in 1967 and March to July in 1968 on a portion of the canal were not performed in the belief that he was the owner. It is clear from the record that the defendant meant to possess adversely as owner only when he interfered with plaintiff's possession just prior to the suit in

1970. There was no continuous corporeal adverse possession as owner by the defendant in 1967 or 1968; he merely used, without intent to claim as owner, a portion of plaintiff's unneeded and unused canal during those years.

In 1968 plaintiff used the portion of the canal from "A" to "N", as shown on the plat attached to this dissent, to irrigate Bernard Regan's property. Defendant claims the use during that year of the canal only from "N" to "Y". Defendant could not have used the portion "N" to "Y" unless the floodgate at point "N" had been maintained in a closed position by the plaintiff. Plaintiff in fact reconditioned and closed a gate at or near point "N" at the beginning of the 1968 rice season. It cannot be disputed that in 1968 plaintiff fully maintained the canal from "A" to "N", including the floodgate at point "N". The building and locking-in of the floodgate at point "N" were necessary to plaintiff's use of that portion of the canal but also made it possible for the defendant to use the portion "N" to "Y" with his own water. Defendant made use of this portion simply because it was available and because *deficiencies* in his own canal work made his canals unusable for irrigation of his land that year. So, even if we assume arguendo that there was an interruption of possession in 1967, plaintiff still possessed for one year prior to the suit by

its maintenance of portions of the canal in 1968 and its operational activities in 1969, which were continued through civil acts of possession.

Plaintiff has pleaded estoppel alternatively, arguing that defendant has acquiesced in the canal's passing over his estate and in the use of it for water flowage. The 1969 use by plaintiff of the canal for water flowage was known by defendant, and he made no objection. This knowledge and acquiescence of defendant do not constitute estoppel; but they buttress, if they do not establish, the finding that defendant's activities in the previous seasons (1967 and 1968) were not carried on by him as owner but were performed simply in the hope that plaintiff would not interfere with them.

It is not difficult to make a positive determination under the law that the plaintiff has a right to maintain this possessory action and the ancillary injunctive proceedings. However, the real right here considered is of such a special kind that I would be hesitant to resort to laws which did not contemplate this particular right. These irrigation canals, vital to one of the most important agricultural enterprises of Louisiana, have existed in a large area of our state for many, many years with a particular and peculiar quality not assignable to servitudes or other particularized real rights. They have been utilized in most

cases without title and by mutual consent of landowners and irrigation companies. Numerous contracts between rice farmers and suppliers of water have been drawn over the years which in many particulars do not meet the legal requirements for title to other real rights. This manner of exercising the right has continued for such a long period that it has become the custom of the place. It is the custom, as previously noted, for these canals to be managed and maintained by companies even though portions of them lie unused during the years when adjacent lands are not planted to rice because of crop rotation or legal allotment of acreage. In the present case every witness testified that the right to use the canal had belonged to and been exercised by the plaintiff, and that it was the custom to contract with the plaintiff when water was needed in particular portions of the canal for irrigation of the rice lands.

Under Civil Code Articles 3 and 21 we are required to look to custom, to natural law and reason, and to received usages when the positive law is silent. Our courts in dealing with another real right, the mineral right, were able to develop law on that subject by resort to custom and through analogy to the law governing other real rights. We cannot and need not decide here the full nature of this particular right or the legal ramifications which are the natural appendages of such a right. We need only determine whether plaintiff has possessed that right as owner sufficiently to maintain its possessory action.

In my opinion this record supports a finding that under the Civil Code and the Code of Civil Procedure plaintiff continually possessed the right to operate the irrigation canal for many years until disturbed in that possession by the defendant's cutting of the canal levee in April of 1970, shortly before suit, and that therefore the plaintiff's possession satisfies the requirements for the possessory action of Civil Code Articles 3454, 3455, and 3456 and Code of Civil Procedure Articles 3655, 3658, and 3663. Moreover, when we resort to custom, natural law, and received usages as well as analogy to the law affecting similar rights, it is clear that plaintiff has established its right to maintain that action.

I respectfully dissent.

[See following illustration]